STATE OF NEBRASKA EX REL. NEBRASKA STATE
BAR ASSOCIATION, RELATOR, V. CHRISTOPHER B. AUPPERLE,
RESPONDENT.
594 N.W.2d 602

Filed May 21, 1999.   No. S-98-524.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Paul M. Gnabasik for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

This is an original action brought by the relator, Nebraska State Bar Association (NSBA), seeking assessment of discipline against the respondent, Christopher B. Aupperle, an attorney admitted to practice law in Nebraska. On November 10, 1997, the NSBA filed charges against Aupperle with the Committee on Inquiry of the Second Disciplinary District pursuant to Neb. Ct. R. of Discipline 9(G) (rev. 1996). After conducting a hearing on March 3, 1998, the Committee on Inquiry transmitted formal charges to the Disciplinary Review Board pursuant to Neb. Ct. R. of Discipline 9(H)(3)(h). Acting upon an application

by the Committee on Inquiry, this court, on May 29, 1998, temporarily suspended Aupperle from practicing law in the State of Nebraska until further order of the court. See Neb. Ct. R. of Discipline 12 (rev. 1996).

On July 30, 1998, the Disciplinary Review Board filed formal charges, consisting of five counts, in this court. On August 25, an additional formal charge was filed pursuant to Neb. Ct. R. of Discipline 10(F) (rev. 1996). Each of the formal charges alleged violations of one or more of the following provisions of the Code of Professional Responsibility, Canons 1, 2, 6, and 7:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

. . . .

DR 2-110 Withdrawal from Employment.

. . . .

(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

. . . .

(4) The lawyer is discharged by his or her client.

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his or her representation of a client, a lawyer shall not:

. . . .

(5) Knowingly make a false statement of law or fact.

In answers to the original and additional formal charges, Aupperle admitted most of the factual allegations contained therein. Because the answers did not raise issues of fact, this court did not appoint a referee but directed the parties to file briefs and subsequently heard oral argument.

The relator's burden of proof in disciplinary proceedings is to establish the allegations set forth in the formal charges against the attorney by clear and convincing evidence. See, *State ex rel. NSBA v. Johnson, ante* p. 495, 590 N.W.2d 849 (1999); *State ex rel. NSBA v. Johnston*, 251 Neb. 468, 558 N.W.2d 53 (1997). If, in an attorney disciplinary proceeding, the respondent's answer raises no issue of fact, the matter may be disposed of by the court on its own motion. Neb. Ct. R. of Discipline 10(I).

## FACTS

Aupperle was admitted to the practice of law in the State of Nebraska on September 14, 1992, and during the period when the alleged disciplinary violations occurred, he was engaged in the private practice of law in Douglas County, Nebraska.

### FORMAL CHARGES: COUNT I

In August 1996, Neal Grabow retained Aupperle to represent his business, Wild Ventures, Inc., in commercial litigation. Aupperle informed Grabow that a petition had been filed and that a trial would be held. At the time this representation was made, Aupperle had not filed any petition on behalf of Grabow or his company. Aupperle subsequently informed Grabow that a trial date had been set for June 26, 1997. When he made this representation, Aupperle had not filed any petition on Grabow's behalf.

Grabow appeared for trial at the Sarpy County Courthouse on June 26, 1997, as instructed by Aupperle, but neither Aupperle nor the intended defendant appeared. Grabow attempted to reach Aupperle by telephone and left a message with Aupperle's answering service to call Grabow at the courthouse. Grabow then inquired with the clerk of the court and discovered that no petition had been filed on his behalf and that no trial had been scheduled. On the same day, Aupperle telephoned Grabow and advised him that the intended defendant had filed for bankruptcy protection. When Aupperle made this statement, he

had not received notice of any such bankruptcy. Later the same day, Aupperle again telephoned Grabow and stated that he would either have a judgment against the intended defendant or have a check from the intended defendant yet that day. Aupperle had no basis in fact for making these statements.

### FORMAL CHARGES: COUNT II

In June 1996, Jennifer Kempkes retained Aupperle to represent her in marriage dissolution proceedings. Aupperle filed a petition for dissolution on her behalf and served discovery requests upon the attorney representing her husband. Aupperle was involved in the case through 1996. Because Kempkes had been unable to contact Aupperle or communicate with him about her case, she wrote to him on July 8, 1997, instructing him to withdraw as her attorney. In his October 23 response to Kempkes' complaint filed with the NSBA, Aupperle admitted that he failed to withdraw from Kempkes' case when he received her letter instructing him to do so. He further stated in the response that he would immediately file a motion to withdraw. Aupperle sought leave to withdraw from the case in a motion dated February 28, 1998, which was granted by the court on March 2.

### FORMAL CHARGES: COUNT III

In March 1997, Kristen Esper retained Aupperle to represent her in a marriage dissolution proceeding. He filed a petition for dissolution on her behalf on April 7. Being unable to contact Aupperle or communicate with him about her case, Esper sent him a letter on August 25, instructing him to withdraw from the case and to refund a $500 retainer. In his October 23 response to Esper's complaint filed with the NSBA, Aupperle admitted that he had failed to withdraw upon receiving Esper's letter instructing him to do so, but that he had "taken action to withdraw from the case at this time." However, Aupperle did not file a motion to withdraw until late February 1998.

### FORMAL CHARGES: COUNT IV

In November 1996, Tamara Kathrens retained Aupperle to represent her in a marriage dissolution proceeding. He filed a petition for dissolution on her behalf on December 31. During

the months of June, July, and August 1997, Aupperle failed to communicate with Kathrens or keep her advised concerning her case, despite her repeated attempts to contact him. On July 7, the administrator for the district court for Douglas County sent notice to Aupperle that Kathrens' case would be dismissed in 30 days unless certified for trial. Aupperle did not advise Kathrens of this notice or take any steps to protect her interests. On August 7, the court dismissed Kathrens' case and sent notice to Aupperle. However, Aupperle did not notify Kathrens of the dismissal. In August, Kathrens sent a letter to Aupperle requesting that he withdraw as her attorney and retained substitute counsel in order to have her case reinstated to allow her to proceed with the dissolution. Aupperle did not file a motion for leave to withdraw as Kathrens' counsel until late February 1998.

### FORMAL CHARGES: COUNT V

In December 1995, Bradley S. Doyle retained Aupperle to represent him and his wife in litigation involving their home. Aupperle assumed responsibility for the case from the Doyles' previous attorney, who had filed a petition and begun discovery. However, Aupperle did not file an appearance on behalf of the Doyles in the pending action. On January 8, 1996, the administrator for the district court for Douglas County sent notice to the attorneys of record in the Doyles' case that it would be dismissed in 30 days unless a certificate of readiness for trial was filed. Because Aupperle had not entered his appearance, he did not receive this notice from the court. Despite the fact that the case had been dismissed without his knowledge, Aupperle continued to assure Bradley Doyle that it was still pending and that he was waiting for the court to set a trial date. From May through August 1997, Bradley Doyle was unable to reach Aupperle by telephone despite repeatedly leaving messages with his answering service. Aupperle did not return these calls.

### ADDITIONAL FORMAL CHARGE

On August 6, 1996, as attorney for Gary Maddox, Aupperle filed an application to modify a decree of dissolution entered by the district court for Douglas County. April Maddox filed a pro se response on August 27. On October 18, Aupperle filed a certificate of readiness for trial in this proceeding and sent a copy

to April Maddox. On the same date, he also filed a notice of serving requests for production of documents, indicating that he had mailed said request to April Maddox. On December 10, attorney Rebecca Schmitt entered her appearance for April Maddox and mailed a copy of the entry of appearance and a request for production of documents to Aupperle.

In January 1997, Gary Maddox instructed Aupperle to dismiss his application to modify. On or about January 13, Aupperle prepared and submitted an order of dismissal, which was entered by the court on the same date. On January 27, Schmitt filed a motion to vacate the order of dismissal, scheduled a hearing on the motion for February 5, and mailed the notice of the hearing to Aupperle as attorney for Gary Maddox. Prior to the hearing, Aupperle contacted Schmitt and indicated to her that he did not have grounds to oppose her motion and would not attend the hearing. They agreed that Schmitt would file an amended answer and cross-petition on behalf of April Maddox. At the hearing on February 5, the court ruled that Gary Maddox's application to modify would remain dismissed, but gave April Maddox leave to file an amended cross-application seeking modification of the decree, which was filed on February 13.

On that day, Schmitt wrote to Aupperle, inquiring about Aupperle's responding to the document production requests she had served on December 9, 1996. On March 11, 1997, Schmitt filed a motion to compel production of documents and scheduled a hearing for March 21. On March 19, Aupperle agreed that the documents would be produced by March 31, and an order was entered to that effect. However, he did not inform Gary Maddox that the motion to compel had been filed and did not inform him thereafter of his agreement that the documents would be produced by March 31. On April 7, Schmitt wrote to Aupperle, requesting production of the documents which had not been produced. Aupperle did not immediately respond to Schmitt's letter.

On May 1, 1997, Schmitt filed a second motion to compel production, which also requested attorney fees. At a hearing on May 15, Aupperle appeared with Gary Maddox and the court entered an order requiring that the documents be produced by May 19 and deferred a ruling on the request for attorney fees.

Aupperle did not produce the documents by May 19, and Schmitt filed a third motion to compel production on May 21. Aupperle delivered the documents to Schmitt on the following day.

Aupperle appeared with Gary Maddox at the trial on April Maddox's cross-application to modify on August 12, 1997. At the conclusion of trial, the court instructed counsel to submit briefs on any additional issues they wished the court to address. Aupperle did not submit a brief.

On August 21, 1997, the court wrote a letter to Aupperle and Schmitt instructing them to appear in court on Monday, August 25, to hear its findings and decision in the Maddox case. The letter was received at Aupperle's office on Friday, August 22, while he was out of town, and he did not learn of the letter until the afternoon of August 25. Aupperle did not appear at the hearing at which the court entered its findings and instructed Schmitt to prepare a proposed order, which included an award of attorney fees to April Maddox from Gary Maddox. On August 27, the court entered the order modifying the decree, and a signed copy was mailed to Aupperle. Aupperle had not informed Gary Maddox of the August 25 hearing and did not send a copy of the August 27 order to him.

### PRIOR DISCIPLINARY ACTION

On October 1, 1996, Aupperle received a private reprimand from the Committee on Inquiry for violations of DR 1-102(A)(1), and Canon 9, DR 9-102(A)(1) and (2), of the Code of Professional Responsibility. On September 29, 1997, Aupperle received a private reprimand from the Committee on Inquiry for violations of DR 1-102(A)(1), DR 6-101(A)(3), and DR 9-102(B)(4) of the Code of Professional Responsibility.

## FINDINGS AND ASSESSMENT OF DISCIPLINE

### DISCIPLINARY RULE VIOLATIONS

With respect to count I, we find that the admitted facts clearly and convincingly establish that Aupperle engaged in conduct involving dishonesty, fraud, and misrepresentation, in violation of DR 1-102(A)(4); he neglected the legal matter entrusted to him by Grabow, in violation of DR 6-101(A)(3);

and he made false statements to Grabow while acting as his attorney, in violation of DR 7-102(A)(5). With regard to count II, we find on the basis of clear and convincing evidence that Aupperle neglected the legal matter entrusted to him by Kempkes, in violation of DR 6-101(A)(3); that he violated DR 2-110(B)(4) by not promptly withdrawing from the case when instructed by his client to do so; and that such conduct, viewed as a whole, was prejudicial to the administration of justice and thus violated DR 1-102(A)(2). Regarding count III, we find on the basis of clear and convincing evidence that Aupperle neglected the legal matter entrusted to him by Esper, that he did not promptly withdraw from the case when instructed to do so by his client, and that such conduct was prejudicial to the administration of justice, thereby violating DR 6-101(A)(3), DR 2-110(B)(4), and DR 1-102(A)(5). As to count IV, we find on the basis of clear and convincing evidence that Aupperle neglected the legal matter entrusted to him by Kathrens, that he failed to withdraw promptly when instructed by his client to do so, and that such conduct was prejudicial to the administration of justice, in violation of DR 6-101(A)(3), DR 2-110(B)(4), and DR 1-102(A)(5). With respect to count V, we find on the basis of clear and convincing evidence that Aupperle neglected the legal matter entrusted to him by the Doyles, in violation of DR 6-101(A)(3). The NSBA argues with respect to this count that Aupperle should be found to have also violated DR 1-102(A)(4) by engaging in conduct involving dishonesty, deceit, and misrepresentation and DR 7-102(A)(5) by knowingly making a false statement of fact to his clients. However, these allegations were not set forth in the formal charges, and we conclude that in any event, they are not proved by clear and convincing evidence, since Aupperle did not admit actual knowledge of the dismissal of the Doyles' case at the time of the representations at issue. With respect to the additional charge, we conclude on the basis of clear and convincing evidence that Aupperle's neglect of the matter entrusted to him by Gary Maddox violated DR 6-101(A)(3). We further find that Aupperle's violation of the disciplinary rules as set forth herein constitutes a violation of DR 1-102(A)(1).

DISCIPLINE

To determine whether and to what extent discipline should be imposed in an attorney proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance and reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Johnson,* ante p. 495, 590 N.W.2d 849 (1999); *State ex rel. NSBA v. Schleich,* 254 Neb. 872, 580 N.W.2d 108 (1998). Each case must be evaluated individually in light of its particular facts and circumstances. *Id.* For purposes of determining the proper discipline, we consider the respondent's acts both underlying the events of the case and throughout the disciplinary proceeding. See, *State ex rel. NSBA v. Johnson, supra; State ex rel. NSBA v. Schmeling,* 247 Neb. 735, 529 N.W.2d 799 (1995). Cumulative acts of attorney misconduct are distinguishable from isolated incidents of neglect and therefore justify more serious sanctions. *State ex rel. NSBA v. Johnson, supra; State ex rel. NSBA v. Schmeling, supra.*

Of the multiple disciplinary violations which occurred in this case, Aupperle's repeated false statements to Grabow regarding the legal matter which Grabow had entrusted to him are the most serious and troubling. A lawyer's integrity and the client's right to rely upon the lawyer's word form the bedrock of an attorney-client relationship. A knowingly false statement made by a lawyer to a client not only constitutes a breach of trust but also taints the reputation of the bar as a whole and requires firm disciplinary action in order to protect the public, as well as deter others from engaging in such conduct. We note that Aupperle recognized the significance of his false statements to Grabow in his testimony before the Committee on Inquiry. When asked to explain his failure to communicate with various clients as alleged in counts II through V of the formal charges, Aupperle stated:

> At that time, you know, to be perfectly honest, the majority of this culminated with Mr. Grabow's situation and my misrepresentation to him. In June when that occurred, I realized what I had done and what detriment I had done to

my ability to probably practice law and to represent clients at that time.

While this may explain Aupperle's subsequent conduct, it does not excuse it. Six persons experienced the frustration and prejudicial consequences of a lawyer who neglected the matters they had entrusted to him and failed to communicate with them when they sought explanations. Without question, a lawyer who neglects an entrusted matter has failed to act competently and is guilty of unprofessional conduct, for which we have imposed sanctions up to and including disbarment. *State ex rel. NSBA v. Johnston,* 251 Neb. 468, 558 N.W.2d 53 (1997); *State ex rel. NSBA v. Calinger,* 248 Neb. 903, 539 N.W.2d 846 (1995); *State ex rel. NSBA v. Schmeling, supra.* Where there is a pattern of neglect, as in this case, protection of the public and the maintenance of the reputation of the bar as a whole are of paramount concern.

In proceedings before the Committee on Inquiry and this court, Aupperle has readily admitted his misconduct and acknowledged responsibility for his actions. This reflects positively upon his attitude and character and is a factor which we consider in determining the appropriate discipline, bearing in mind that the purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice. See *State ex rel. NSBA v. Barnett,* 248 Neb. 601, 537 N.W.2d 633 (1995).

During the hearing before the Committee on Inquiry, Aupperle was specifically asked whether he had a "problem with alcohol" during 1997 and he responded in the negative. In an affidavit dated November 2, 1998, which Aupperle filed in this proceeding with leave of this court, he stated that he had been "in denial regarding my drinking problem" at the time of this hearing. He further stated that he was ticketed for driving under the influence of alcohol in May 1998, and he disclosed that with the assistance of the Nebraska Lawyers Assistance Program (NLAP), he admitted himself to an inpatient alcoholism treatment program at a facility in Lincoln for 17 days. Aupperle stated that he satisfactorily completed outpatient therapy in September 1998 and that he continues to attend at least

five Alcoholics Anonymous meetings per week. In his affidavit, Aupperle disclosed the fact that he has sought the assistance of NLAP in dealing with his alcoholism and concludes: "Since my in-patient stay and my continued out-patient therapy, I have learned to accept my alcoholism and have worked at reversing its negative impact on my personal and professional life." Our record also includes medical records, which corroborate Aupperle's statements concerning his treatment. In his brief filed with this court, Aupperle represents that NLAP "has agreed to monitor [Aupperle] in conjunction with the Council for Discipline under guidelines (to be established) which would effectively guarantee the protection of the public, as well as protect the reputation of the Bar as a whole." Brief for respondent at 10.

Mitigating circumstances shown in the record are considered in determining the appropriate discipline imposed on an attorney for violating the Code of Professional Responsibility. *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995); *State ex rel. NSBA v. Ogborn*, 248 Neb. 767, 539 N.W.2d 628 (1995). We have recognized that while substance abuse in no way justifies or excuses attorney misconduct, the fact that an attorney has acknowledged the condition, voluntarily sought treatment, and terminated use of the substance may under some circumstances be considered as a mitigating factor in a disciplinary proceeding. *State ex rel. NSBA v. Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987). However, whether such facts warrant mitigation of discipline in any particular case depends upon the particular facts and circumstances of the attorney's misconduct. *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995).

All of the disciplinary violations which we consider in this case occurred during a period of approximately 1 year. Although Aupperle's behavior appears to have been significantly affected by his alcoholism during this time, he was unable or unwilling to recognize this relationship and now admits that he was "in denial." It has been noted that "[o]ne of the baffling characteristics of alcoholism is that alcoholics having full knowledge of the [effect of alcohol upon behavior and cognitive capabilities], with life problems escalating, will deny

the relationship between alcohol and their problems." Rick B. Allan, *Alcoholism, Drug Abuse and Lawyers: Are We Ready to Address the Denial?*, 31 Creighton L. Rev. 265, 268 (1997).

Aupperle voluntarily ceased practicing law in July 1997, several months prior to his temporary suspension, and appears to have made sincere and productive efforts to confront his condition and obtain the necessary professional treatment. Finally, we note that while Aupperle's disciplinary violations are serious, none involved the misappropriation or commingling of client funds. Compare *State ex rel. NSBA v. Woodard, supra.* We therefore conclude that Aupperle's alcoholism and his efforts to deal with it should be considered in mitigation of the discipline to be imposed.

Accordingly, we hereby suspend Aupperle from the practice of law for an indefinite period retroactive to the date of his temporary suspension on May 29, 1998, with no possibility of reinstatement prior to May 29, 2000. Upon application for reinstatement, Aupperle shall have the burden of proving that he has not practiced law during the period of suspension and that he has met the requirements of Neb. Ct. R. of Discipline 16 (rev. 1996). In addition, reinstatement shall be conditioned upon (1) the payment of all costs of this action, which are hereby taxed to Aupperle; (2) a showing by independent third-party proof that Aupperle has continued active participation in a recovery program and has maintained abstinence from the use of alcohol during the period of suspension; and (3) the submission by Aupperle and approval by this court of a probation plan, to be in effect for a period of 2 years following reinstatement, whereby Aupperle's recovery program and his compliance with the Code of Professional Responsibility will be monitored by NLAP and the Counsel for Discipline. Failure to comply with the terms of the probation plan would constitute grounds for further disciplinary action. See *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995).

JUDGMENT OF SUSPENSION.

MILLER-LERMAN, J., not participating.