STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. BRETT T. MCARTHUR, RESPONDENT.
599 N.W. 2d 592

Filed September 3, 1999.    No. S-98-411.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Rolf Edward Shasteen for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and
MCCORMACK, JJ.

PER CURIAM.
## NATURE OF CASE
This is an attorney disciplinary case in which the Nebraska State Bar Association (NSBA), relator, seeks to discipline Brett T. McArthur, respondent.

## BACKGROUND
The Committee on Inquiry of the First Disciplinary District filed formal charges against McArthur. The committee alleged that while representing a client in an eviction action in 1996 and 1997, McArthur violated Canon 1, DR 1-102(A)(1); Canon 6, DR 6-101(A)(3); and Canon 7, DR 7-101(A)(2) and (3), of the Code of Professional Responsibility. The relevant provisions of the Code of Professional Responsibility are as follows:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

. . . .

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he or she may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

(3) Prejudice or damage his or her client during the course of the professional relationship, except as required under DR 7-102(B).

In his answer to these charges, McArthur admitted that he violated a disciplinary rule, DR 1-102(A)(1), and that he neglected the legal matter entrusted to him, DR 6-101(A)(3), but denied any intentional act under DR 7-101(A)(2) and (3).

Pursuant to Neb. Ct. R. of Discipline 10(F) (rev. 1996), the NSBA filed additional formal charges alleging that while repre-

senting a client in a probation revocation case in 1996, McArthur violated DR 1-102(A)(1), (4), and (5) and DR 6-101(A)(3). The relevant provisions of the Code of Professional Responsibility for the additional charges, in addition to the ones set out above, are as follows: "DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice." In his answer to the additional charges, McArthur denied violating any disciplinary rules.

This court referred the matter to a referee, pursuant to Neb. Ct. R. of Discipline 10(J) (rev. 1996). The referee conducted a formal evidentiary hearing. McArthur was present and represented by counsel. As to the original formal charges, the referee found that the actions of McArthur constituted violations of his oath of office; violated a disciplinary rule, DR 1-102(A)(1); and neglected a legal matter entrusted to him, DR 6-101(A)(3). The referee did not find that McArthur violated DR 7-101(A)(2) or (3). As to the additional formal charges, the referee found that the evidence clearly and convincingly established that McArthur violated his oath and neglected a legal matter entrusted to him, DR 6-101(A)(3). The referee did not find that McArthur violated DR 1-102(A)(4) and (5). The referee recommended that McArthur be suspended from the practice of law for 6 months.

## STANDARD OF REVIEW

■■■■ A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Johnson*, 256 Neb. 495, 590 N.W.2d 849 (1999). The charges against an attorney must be established by clear and convincing evidence. *Id.*

## ASSIGNMENTS OF ERROR

In his response to the referee's report and in his brief to this court, McArthur assigns that the referee erred (1) in finding that

McArthur neglected a matter entrusted to him by a client and (2) in recommending an excessive penalty of 6 months' suspension from practice.

## ANALYSIS

A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Johnson, supra.* Upon our de novo review of the record, we find the following facts:

McArthur was admitted to the practice of law in the State of Nebraska on September 17, 1993. At all times relevant hereto, McArthur was engaged in the private practice of law in Lancaster County, Nebraska.

McArthur was hired by Theresa Norfolk to defend her in an eviction action brought by Sunburst Properties, Inc. McArthur and Norfolk attended the eviction trial on December 31, 1996, at which time Sunburst Properties' first cause of action for restitution of the premises was heard. The first cause of action was taken under advisement, and a hearing on the second and third causes of action for past-due rent and unlawful holdover was continued to a date to be set at a later time. On January 7, 1997, the county court entered a judgment for restitution of the premises in favor of Sunburst Properties and against Norfolk. A copy of the judgment was mailed to McArthur by the clerk of the county court, but McArthur failed to send a copy of the judgment to Norfolk or advise her of the same. McArthur denies receiving notice of the judgment for restitution. After being served with a writ of assistance by the sheriff of Lancaster County, Norfolk made arrangements to move out of her apartment. Norfolk attempted to contact McArthur by telephone, leaving a message asking why she had not been notified by McArthur of the county court's writ of restitution. McArthur failed to return the call. Norfolk subsequently received a bill from McArthur for the remainder of what she owed him, where-

upon she called McArthur's office and left another message with the receptionist saying that she was not going to pay the bill until she talked to McArthur about why he did not contact her after the judgment was entered against her. Again, Norfolk received no response from McArthur. After the trial on December 31, 1996, Norfolk did not have any direct contact or communication with McArthur.

On January 1, 1997, McArthur moved from his offices at 3601 Calvert Street to 6201 South 58th Street, Lincoln, Nebraska. McArthur put in a forwarding address request for all correspondence with the U.S. Post Office and provided cards to courts and other counsel with whom he was doing business, advising of the change of address. However, McArthur did not file a specific notice in each case in which he was involved and, specifically, did not file a notice of a change of address with the county court in the case against Norfolk. McArthur testified that he later found out a substantial amount of his mail was sent to his old address and was not immediately forwarded.

On February 11, 1997, Mark S. Dickhute, counsel for Sunburst Properties, wrote McArthur a letter and sent it to McArthur's old business address at 3601 Calvert Street. The letter included an offer to settle the remaining claims against Norfolk and to dismiss with prejudice the balance of the petition if Norfolk paid prorated rent and late charges through January 12, 1997, in the amount of $282.48, attorney fees in the amount of $250, and court costs. The letter further stated that if the offer was not amenable to Norfolk, Dickhute would certify the matter for trial. McArthur received the letter but did not forward a copy of the letter to Norfolk or advise her of its contents.

Subsequently, Dickhute filed a motion for default judgment on the two remaining causes of action against Norfolk, seeking $282.48 for past-due rent, damages for willful holdover in the amount of $2,085, and attorney fees in the amount of $245. Dickhute mailed notice of the motion, as well as a notice of a hearing on said motion scheduled for February 28, 1997, to McArthur at his old business address, 3601 Calvert Street. McArthur received notice of the motion for default judgment and the hearing, and he appeared on February 28 for the hearing on the motion. McArthur did not contact or notify Norfolk about

the default hearing. The county court denied the motion for default judgment and set the matter for trial on March 10. At the time of the hearing, Dickhute made the same offer of settlement that was previously offered in his February 11 letter. McArthur again failed to advise Norfolk of the settlement offer and failed to notify her of the March 10 trial date.

On March 5, 1997, Dickhute mailed a letter to the clerk of the county court, advising the court that he would be unavailable for trial on March 10 and requesting that the county court reschedule the trial date until sometime later in March. Dickhute also notified McArthur that he was unavailable for trial on March 10.

On March 6, 1997, the county court set the trial in the case against Norfolk for May 20 and mailed notice of that trial date to Dickhute and McArthur. Although it is unclear to what address the county court sent the notice to McArthur, it is clear that McArthur received the notice because, as discussed below, he sent his associate to court on May 20 to ensure the hearing was covered. McArthur again did not inform Norfolk of the trial date.

On May 16, 1997, the county court called the offices of both Dickhute and McArthur and advised that the county court, on its own motion, was continuing the trial date then set for May 20. The county court at that time indicated on its docket that "[o]n Court's Motion, and by agreement of the parties, this case has been continued to: JUNE 23, 1997, at 9:00 a.m. #16." Notice of this new trial date was mailed to McArthur by the clerk of the county court. It is unclear to what address the notice to McArthur was sent. McArthur admits his office received the telephone call from the county court, but says he was not the one who took the call. McArthur denies any recollection of being advised by oral or written notification that the trial had been rescheduled for June 23, and therefore, he did not notify Norfolk of the same.

On May 20, 1997, McArthur directed his associate to appear at the time and place originally set for the hearing on May 20, to ensure that the previously noticed hearing had in fact been continued. The associate appeared, but apparently did not discover the date on which trial had been rescheduled.

On June 20, 1997, Dickhute telephoned McArthur and left a message with his receptionist that he wanted to talk to McArthur

about "the Norfolk trial on June 23, 1997." Dickhute did not hear back from McArthur. On June 23, trial began in the county court on the two remaining causes of action against Norfolk. Neither McArthur nor Norfolk attended the trial, and judgment was entered pursuant to the evidence against Norfolk for past-due rent and late charges, plus a penalty of three times the monthly rental for willful holdover, for a total judgment against Norfolk in the amount of $2,612.48, plus court costs. Notice of the judgment was sent to McArthur by the clerk of the county court. Although it is unclear to what address the notice of judgment was sent to McArthur, McArthur admits that he received notice of the judgment shortly after it was entered. However, McArthur did not inform Norfolk of the judgment.

Following entry of the judgment, Sunburst Properties filed a garnishment action with Norfolk's employer. Norfolk's receipt of notice that her wages were being garnished was the first notice she received that a judgment had been entered against her. On receipt of notice of the garnishment, Norfolk immediately attempted to contact McArthur by telephone, leaving a message at his office, but she did not hear from McArthur. McArthur admits recalling that he did at some point receive a message that Norfolk had called, advising that she was moving, but the message did not request a return telephone call.

Norfolk then contacted the county court and discovered that on June 23, 1997, judgment had been entered against her for $2,612.48. Norfolk subsequently contacted attorney Paul Conley for assistance. On July 8, Conley sent McArthur a letter informing him that Norfolk had contacted him and that Norfolk's wages were being garnished following the entry of judgment against her. The letter further advised McArthur that Norfolk had informed Conley that she had not been aware of the trial date or the judgment entered against her and that she had attempted to contact McArthur without success. The letter further requested McArthur to take immediate action to quash the garnishment and to set aside the judgment.

On July 16, 1997, McArthur filed a motion to vacate the judgment entered on June 23, as well as a motion to withdraw as Norfolk's counsel. McArthur did not file an answer in which he could have raised defenses to the matter on which judgment was

made. At Dickhute's request, the hearing on both the motion to vacate the judgment and the motion to withdraw was continued until August 1. On that date, McArthur and Dickhute both appeared and argued the motions. On August 8, the county court denied McArthur's motion to vacate the judgment.

The second legal matter at issue involves McArthur's representation of Donald E. Williams. In January 1992, Williams was convicted for third-offense driving under the influence (DUI) and was placed on probation for 5 years. In January 1996, proceedings were begun in the Lancaster County Court to revoke Williams' probation due to allegations that he had consumed alcohol in violation of his probation restrictions. In May, McArthur began representing Williams in his probation revocation case. From the beginning of the professional relationship between McArthur and Williams, it is clear that McArthur was aware that because of the nature of Williams' business, his primary concern was that he not be required to go to jail during the summer months when his business was the busiest.

On August 27, 1996, McArthur represented Williams in the probation revocation hearing. The county court found that Williams had violated his probation, and on October 11, Williams was sentenced to 100 days in jail and a 15-year suspension of his driver's license. On October 14, McArthur, on behalf of Williams, filed a notice of appeal to the district court. The hearing on that appeal occurred on December 18. On December 21, McArthur wrote to Williams to inform him that he had argued the appeal in the district court and that a decision would be forthcoming. On March 31, 1997, the district court affirmed the revocation of Williams' probation by the county court. By letter dated April 2, Williams was informed by the county court that the district court had affirmed the judgment of the county court and that Williams had to report to jail on April 9 to begin serving his sentence.

On April 5, 1997, Williams met with McArthur and informed him that he wanted to appeal the district court's decision. Williams gave McArthur a check that day in the amount of $128 to cover the costs of filing an appeal. The exact content of the discussion on April 5 and several later telephone conversations McArthur recalls to have occurred are subjects of substantial

conflict in the evidence. McArthur recalls that in the April 5 or later conversations with Williams, he advised Williams that he did not believe that a direct appeal would ultimately be successful. McArthur recalls discussing with Williams two potential alternatives to avoid some or all of the results of the probation revocation, which included a motion for new trial on his original conviction for DUI, third offense, and a collateral attack to reopen the third-offense DUI conviction. McArthur recalls that in mid-April, however, he advised Williams that he thought a direct appeal was pointless because of the lack of a meritorious issue for appeal and because ultimate resolution of an appeal would likely result in Williams' beginning to serve his sentence sometime in the summer of 1998, at a time when Williams did not want to serve his sentence. McArthur testified that he told Williams that if the case was not appealed, Williams would probably be looking at going to jail sometime in September 1997. McArthur recalls that Williams simply told him to "take care of it" and that he could not afford to go to jail during the summer and to do what McArthur thought best. McArthur recalls telling Williams at some point in April that he would use the money that was to originally be used for filing an appeal and apply it toward the costs of reviewing and copying Williams' third-offense DUI file and the files on his other DUI cases, and for fees and hearings on a potential collateral attack or a motion for new trial. McArthur recalls that it was clear to him that at least at some point in mid- to late April, Williams understood that a direct appeal was not going to be filed. However, McArthur did not document this agreement in any way.

Williams reported as directed to the Lancaster County jail on April 9, 1997, with an assurance by McArthur that he would do something to get Williams out of jail and forestall further service of the sentence. McArthur contacted the bailiff of the county court, advising that Williams might appeal and that he did not think the county court should have ordered Williams to go to jail because a mandate should not have been issued from the district court as the time for filing an appeal had not yet run. A partial record of the county court, dated April 17, 1997, was received into evidence without objection by either party. The record seems to indicate that a "mandate" was received from the

district court on April 1 and that "an appeal" was filed on April 11 in the county court. The record bears a handwritten note stating that Williams' "[l]icense should not be suspended; appealed 4-11-97." It is clear, however, that no appeal had been filed at this point with the district court or the county court and in any event, an appeal at the county court level would have been ineffective. Williams was released from jail after serving approximately 3 days of his 100-day sentence.

By letter dated April 18, 1997, the Nebraska Department of Motor Vehicles (DMV) advised Williams that "we are in receipt of an amended abstract of conviction from the Lancaster County Court indicating you have appealed your . . . Driving Under the Influence-3rd offense. Therefore, the Order of Suspension of April 11, 1997 is hereby rescinded and you are eligible to drive." There is no evidence in the record and no explanation as to why the county court felt that at least some element of either Williams' third-offense DUI or the probation revocation had been appealed, or why it apparently notified the DMV that it had been appealed. As a result of the letter Williams received from the DMV, Williams apparently was of the understanding that McArthur had filed an appeal. Williams testified that he believed he had been released because an appeal had been filed. McArthur testified that in his opinion, the release occurred because the county court had ordered Williams to report to jail too early (before the time to appeal had run and before the mandate should have come down from the district court). On review of the record, it is possible that Williams' release was the result of confusion by the county court or a misunderstanding on its part that an appeal had been filed.

McArthur testified that on April 30, 1997, after business hours, he received a call from Williams, inquiring whether his appeal had been filed. McArthur testified that he told Williams that no appeal had been filed because the two of them had decided not to file an appeal. McArthur recalls Williams' responding that he wanted McArthur to keep appealing because he did not want to go to jail during the summer. McArthur testified that he told Williams that an appeal could not be filed at this point because it was too late and that he intended to file another motion instead. McArthur stated that Williams, however, told

him to go ahead and file the appeal late because that would at least delay his incarceration. McArthur testified that despite his belief that the appeal would be futile, he filed Williams' notice of appeal with the district court on May 1, 1 day after the deadline for filing an appeal.

Williams denies that any conversation occurred either on April 30, 1997, or later, in which McArthur advised that filing the appeal was too late. Williams testified that he thought an appeal had been filed because he had been released from jail and because of the letter he received from the DMV advising that his driving suspension of April 11 had been rescinded because of a pending appeal. Williams further testified that he first discovered an appeal had been filed late after he had recovered his file from McArthur and had it reviewed by new counsel. Williams testified that to his memory, McArthur had always told him his chances of an appeal were good and that McArthur had told the same thing to Williams' wife.

By letter dated June 16, 1997, the Nebraska Court of Appeals informed McArthur that Williams' appeal was dismissed because it was filed out of time. McArthur admits that he did not inform Williams that the appeal had been dismissed after he received the notification from the Court of Appeals or at any time thereafter. By letter dated July 28, 1997, the district court also informed McArthur that the appeal had been dismissed. McArthur again failed to inform Williams that the appeal had been dismissed.

On August 4, 1997, McArthur filed a motion for new trial in Williams' original third-offense DUI case in the county court. McArthur informed Williams that he filed such a motion, but again did not tell him that his appeal to the Court of Appeals had been dismissed. At some point after McArthur filed the motion for new trial, another motion for new trial that McArthur had filed in another case based on the same grounds as the motion in Williams' case was overruled. McArthur testified that he realized at that point that his motion for new trial in Williams' case was not grounded in existing law, and therefore, McArthur dismissed the motion for new trial and decided to pursue a collateral attack instead. However, McArthur did not advise Williams that he had dismissed the motion for new trial.

McArthur apparently had some discussion with Williams after August 1, 1997, that he intended to pursue a collateral attack rather than a motion for new trial and that this decision would bring about a change of an expected hearing date after McArthur had filed a new petition making his collateral attack. McArthur testified that sometime in October, he ran into Williams at the Lancaster County courthouse and in a hurried conversation, advised Williams that he was "taking care of" the collateral attack he had "anticipated filing." Williams testified that he recalls speaking with McArthur on this occasion and asking him how his case was going and was left with the impression that his case was being taken care of. Williams denied that McArthur mentioned anything about a collateral attack or the withdrawal of the motion for new trial. No collateral attack was ever filed.

By a letter dated October 9, 1997, from the county court, Williams was informed that the "Supreme Court" had affirmed the decision of the county court and that he needed to report to jail on October 15. On October 10, McArthur also wrote a letter to Williams informing him that he had to report to jail on October 15. McArthur failed to correct the errors in the county court's letter of October 9, in that it was not the "Supreme Court" but the Court of Appeals that had dismissed the appeal and that the Court of Appeals did not affirm the decision of the county court, but, rather, that the appeal had been dismissed for being filed out of time. At no time did McArthur inform Williams that the appeal had been filed late and had been dismissed for that reason.

Williams testified that he was "shocked" when he received the letter from the county court and attempted to call McArthur multiple times thereafter, but was unable to make direct contact, speaking only with a secretary, receptionist, or some other representative of McArthur's. Williams' wife also attempted several telephone calls without success. Several of these telephone calls were taken by McArthur's legal secretary, who stated that she informed McArthur of several of the telephone calls. In his conversations with the legal secretary, Williams apparently expressed concern about going to jail because of the effect it would have on his business.

On October 15, 1997, Williams reported to jail. On October 16, Williams' wife went to McArthur's office and picked up an application for a work release. On October 17, Williams' wife called McArthur's office, wanting to know whether the work release had been approved. Williams called the same day and asked about his bill and said he wanted to pick up his file.

After Williams picked up his case file, he contacted a different attorney to look into his case. Upon reviewing his case file, Williams and his new attorney discovered that Williams' appeal was never heard because it had been filed a day late and was dismissed for that reason. Williams and his new attorney also discovered that McArthur had dismissed the motion for new trial.

### DISCIPLINARY RULE VIOLATIONS

After reviewing the record of the proceedings de novo, we find that the evidence clearly and convincingly shows that McArthur violated DR 1-102(A)(1) and DR 6-101(A)(3) in his representation of Norfolk, in that he neglected a legal matter entrusted to him.

As to McArthur's representation of Williams, we find the evidence clearly and convincingly shows that McArthur violated DR 1-102(A)(1) and DR 6-101(A)(3), in that he neglected a legal matter entrusted to him.

### IMPOSITION OF PENALTY

We now address the appropriate disciplinary measure to be taken. To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following facts: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Johnson*, 256 Neb. 495, 590 N.W.2d 849 (1999); *State ex rel. NSBA v. Schleich*, 254 Neb. 872, 580 N.W.2d 108 (1998). Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. *State ex rel. NSBA v. Johnson, supra.*

In both matters at issue, it is clear that McArthur neglected a legal matter principally in failing to keep his clients informed of deadlines, settlement offers, and court decisions and the potential consequences thereof, and in failing to keep himself adequately informed so that he could properly inform his clients. At oral argument, McArthur's counsel conceded that McArthur's actions resulted in ethical violations.

Specifically, in regard to McArthur's representation of Norfolk, he failed to keep Norfolk informed of the status of her case, failed to return telephone calls, failed to inform her of settlement offers, and failed to notify her of hearing dates and the judgment entered against her. In short, McArthur failed by neglect to adequately protect the interests of Norfolk and failed to act competently in representing Norfolk. McArthur admitted in his answer to the formal charges that he neglected a legal matter entrusted to him.

As to McArthur's representation of Williams, McArthur neglected his duty to represent Williams by failing to advise Williams that the appeal to the Court of Appeals had been dismissed as filed out of time and by failing to inform Williams that he had dismissed Williams' motion for new trial. These errors constitute a breach of McArthur's professional responsibility that warrant discipline.

The determination of an appropriate penalty to be imposed on an attorney also requires consideration of any mitigating factors. *State ex rel. NSBA v. Johnson, supra*; *State ex rel. NSBA v. Schleich, supra*. McArthur has satisfied the judgment rendered against Norfolk, although it is unclear whether Norfolk has been made whole with regard to the $500 garnishment withheld from her wages and any additional attorney fees incurred. McArthur has also instituted office practices to ensure that more communication to clients is done in writing and that clients are sent informational copies of correspondence, orders, and journal entries. In addition, deadlines are now kept track of in his office by a particular person who is given authority to respond with follow-up information to inquiries from clients. We also note that at the time these violations occurred, McArthur had been in practice only for approximately 3½ years.

However, a proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. See *State ex rel. NSBA v. Johnson*, 256 Neb. 495, 590 N.W.2d 849 (1999). Thus, while we may consider the recommendation of a referee regarding the appropriate sanction to be imposed, the referee's recommendation regarding a sanction receives less deference from this court than do his or her findings on matters of disputed fact.

To determine what sanction is appropriate, each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances. *State ex rel. NSBA v. Bruckner*, 249 Neb. 361, 543 N.W.2d 451 (1996); *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995). This determination does not occur in a vacuum, however, and the propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. Our prior decisions reveal that neglect of the kind presented in the instant case has previously been punished by a suspension of no less than 1 year.

Most recently, we decided *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999). In that case, the respondent was charged with several counts of failing to act upon cases entrusted to him and failing to communicate with his clients regarding those cases. *Id.* The respondent admitted to the charges and presented evidence that he had been suffering from alcoholism, had voluntarily ceased the practice of law when he realized the degree to which alcohol had been affecting his practice, and had taken steps to control his alcohol problem. *Id.* We recognized those mitigating circumstances, yet still imposed an indeterminate suspension of no less than 2 years, to be followed by a 2-year period of probation, and conditioned reinstatement upon payment of the costs of the disciplinary proceeding, a showing of continued participation in alcohol treatment, and the submission of a plan for supervised probation. *Id.*

In the present case, there are similar allegations of neglect, and no comparable admission of responsibility on the part of McArthur, yet the penalty recommended by the referee to be imposed is significantly less severe.

In *State ex rel. NSBA v. Calinger*, 248 Neb. 903, 539 N.W.2d 846 (1995), the respondent was charged with a single count of neglect, the result of which was the dismissal of the client's workers' compensation petition. In that case, there was no indication of prior charges, yet we imposed a 1-year suspension from the practice of law. *Id.*

Similarly, in *State ex rel. NSBA v. Schmeling*, 247 Neb. 735, 529 N.W.2d 799 (1995), the respondent was charged with a single count of neglect due to his failure to timely file a chapter 13 bankruptcy plan. The respondent also failed to discuss the revised bankruptcy plan with his clients or to inform them when the bankruptcy petition was dismissed. *Id.* We suspended the respondent from the practice of law for a period of 1 year. *Id.*

In *State ex rel. NSBA v. Kirshen*, 232 Neb. 445, 441 N.W.2d 161 (1989), the respondent was disbarred not only for his neglect of his clients' interests but also for his conduct in the course of defending himself against the disciplinary charges. Among the excuses offered by the respondent was that the complaining witness, a beneficiary of the estate for which the respondent was responsible, was elderly and confused. *Id.* We found this defense to be without merit, stating:

> A lawyer, with the great responsibilities that that position requires, should not disparage his clients or those for whose benefit he is purportedly acting, and hide behind their alleged faults to excuse his own ineptitude. Not only is such an approach unmannerly and unseemly, it is not recognized as a defense to disciplinary matters. If a lawyer accepts a case, that case must be handled professionally. If, due to personal relationship problems, the lawyer cannot handle his responsibility, the lawyer must withdraw and turn the matter over to a lawyer who has the competence and integrity to conclude the legal matter properly.

*Id.* at 474, 441 N.W.2d at 178.

Similarly, in the present case, McArthur has sought in part to blame his misconduct in the Williams case on the alleged ine-

briation and confusion of his client. McArthur's argument presents a fundamental misunderstanding of his duty as a lawyer. As noted in *State ex rel. NSBA v. Kirshen, supra*, a lawyer is responsible for adequately representing his client regardless of that client's behavior, and if that proves impossible, then the lawyer should withdraw from representation of that client.

If McArthur's client was indeed confused about the legal posture of his case, then it was McArthur's responsibility to ensure that his client was properly advised regarding his legal rights and that appropriate actions were taken to secure those rights. Instead, McArthur evidently left his client ignorant of the posture of the case and ultimately filed an untimely appeal in lieu of a promised "collateral attack" that never materialized. If McArthur's client was indeed ignorant or confused regarding his legal rights, it was McArthur's place to correct that condition and not to rely upon it as an excuse for his own neglect.

In *State ex rel. NSBA v. Rasmussen*, 232 Neb. 53, 439 N.W.2d 481 (1989), the respondent was charged with failing to attend to a client's discrimination claim. Specifically, the respondent failed to appear for a pretrial conference, failed to respond to a motion for summary judgment even after he asked for and was granted additional time to file a response, and failed to notify his client when summary judgment was entered against her. *Id.* There was no indication of prior discipline of the respondent, yet this court entered a judgment of disbarment. *Id.*

In *State ex rel. Nebraska State Bar Association v. Walsh*, 206 Neb. 737, 294 N.W.2d 873 (1980), the respondent was charged with misconduct in his representation in a workers' compensation action, as well as his issuance of an insufficient-funds check in another matter. In the workers' compensation action, we noted that the respondent knew that his clients did not understand the lack of merit to their claim, yet he continued to prepare groundless pleadings in an effort to mollify them. *Id.* With reference to the preparation of groundless pleadings, we said that "nothing can be said to excuse such conduct." *Id.* at 747, 294 N.W.2d at 878. We ordered that the respondent be disbarred. *Id.*

Similarly, in the present case, McArthur has claimed that he knowingly filed an untimely appeal in the Williams case in order to satisfy the demands of his client. Even if this questionable

explanation were true, it does little to mitigate the charge against McArthur. As in *State ex rel. Nebraska State Bar Association v. Walsh, supra*, McArthur prepared and filed a frivolous appeal solely to satisfy the unreasonable demands of his client. If that is true, McArthur's filing of an appeal he knew to be frivolous, solely for the purpose of delaying the administration of justice, could independently constitute a violation of Canon 7, DR 7-102, of the Code of Professional Responsibility.

In short, the discipline recommended to be imposed in this case is inadequate and inconsistent with our prior cases. The record presents none of the mitigating circumstances that this court has previously considered when determining the appropriate discipline to be imposed and actually evidences behavior by McArthur that we have in the past specifically condemned. For the misconduct with which McArthur was charged, the need for deterring others, the maintenance of the reputation of the bar as a whole, the protection of the public, *and primarily* the general lack of responsibility taken by McArthur for his acts, we hereby suspend McArthur from the practice of law for a period of 1 year.

## CONCLUSION

Therefore, we find in our de novo review that McArthur should be suspended from the practice of law for a period of 1 year, effective immediately.

JUDGMENT OF SUSPENSION.

MILLER-LERMAN, J., not participating.