STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. MICHAEL L. MEFFERD, RESPONDENT.

604 N.W.2d 839

Filed January 21, 2000.    No. S-98-1126.

Stephen A. Scherr, of Whelan & Scherr, for relator.

Michael L. Mefferd, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

## INTRODUCTION

Formal charges were filed by the Nebraska State Bar Association (NSBA), relator, against Michael L. Mefferd, respondent, a member of the NSBA since 1980. For the reasons set forth below, we order the respondent suspended from the practice of law for a period of 1 year.

## FACTS OF CASE

In the summer of 1995, Kimberly Alderman, then the wife of Paul Alderman, contacted Mefferd. Kimberly Alderman was seeking legal representation for her husband, who had been charged with criminal offenses. Mefferd and Kimberly Alderman orally agreed that Mefferd would be paid $2,500 to represent Paul Alderman on these charges. Kimberly Alderman paid Mefferd $1,000 at the time of their agreement. Mefferd and the Aldermans understood that the remaining $1,500 would be paid from a refund of Paul Alderman's bail bond of $25,000. The Aldermans anticipated that $2,500 of the bond would be refunded, of which Mefferd would receive $1,500 and the Aldermans would receive the remainder.

Kimberly Alderman signed the bond over to Mefferd. The actual bond refund amount was $2,250, which was cashed by Mefferd on June 25, 1996. However, Mefferd did not refund the $750 overpayment to the Aldermans. Kimberly Alderman called Mefferd's office on numerous occasions, attempting to speak with Mefferd about the overpayment, but each time was told by Mefferd's secretary that Mefferd was out or busy. Kimberly Alderman left messages for Mefferd to call, but she got no response.

While incarcerated, Paul Alderman also attempted to reach Mefferd on several occasions about the overpayment, but his collect calls were refused. Paul Alderman wrote a letter to Mefferd about the overpayment. He mailed the letter to Kimberly Alderman, asking her to place her current return address on the envelope because he thought it was more likely that Mefferd would open the letter if it came from Kimberly Alderman. Kimberly Alderman mailed the letter to Mefferd, but Mefferd never responded.

On August 8, 1996, Dennis Carlson, Counsel for Discipline for the NSBA, received a letter from Paul Alderman regarding Mefferd's actions. Mefferd received notification of the complaint against him on August 12, personally signing the return receipt on that date. Mefferd was required to file a written response to the complaint with the Counsel for Discipline within 15 working days after receipt of the complaint, pursuant to Neb. Ct. R. of Discipline 9(E) (rev. 1996). Mefferd filed no response.

Carlson sent additional letters to Mefferd on September 4 and 18, 1996. Mefferd did not respond. On October 29, Carlson called Mefferd at his office and left a message for Mefferd to return the call. Mefferd did not respond. On November 5, Carlson called again and was told by Mefferd's secretary that Mefferd was with a client. Carlson said that he would expect a return call that afternoon, and Mefferd called back that day. Mefferd told Carlson that he had sent his written response to the Counsel for Discipline approximately 6 weeks earlier. Mefferd then told Carlson he would send another copy of his written response to Carlson by certified mail.

Carlson received nothing from Mefferd. On November 13, 1996, Carlson called and informed Mefferd he had still not

received his response and left a message for Mefferd to return his call. Mefferd did not respond. On November 14, Carlson called again, but no one answered the telephone. On November 15, Carlson wrote to Gerald Matzke, chair of the Committee on Inquiry of the Sixth Disciplinary District for the NSBA (hereinafter Committee), explaining that it was necessary to seek a temporary suspension of Mefferd's license due to Mefferd's failure to respond to the Alderman complaint. A copy of this letter was sent to Mefferd. Mefferd again did not respond. Matzke filed an application with the Nebraska Supreme Court requesting that Mefferd be temporarily suspended from the practice of law. The Supreme Court issued an order to show cause why Mefferd should not be temporarily suspended.

Mefferd filed a response to the show cause order. This response was received by the Counsel for Discipline on January 30, 1997. Mefferd's written response to the Alderman complaint was attached. His written response had a typed date on it of September 16, 1996.

Carlson continued investigating the Alderman complaint. Carlson wrote to Mefferd on April 14 and May 12, 1997, with some additional questions. Mefferd did not respond to the April 14 letter, but did respond to the May 12 letter. Carlson wrote Mefferd again on June 30 and July 15 with further questions, but Mefferd did not respond to either letter.

In June 1997, Carlson received another complaint against Mefferd from Robert G. Rose. Mefferd, while acting as a deputy public defender, had been appointed to handle Rose's appeal on a criminal matter. Rose's appeal was dismissed when Mefferd failed to file a brief.

On July 1, 1997, Mefferd received a certified letter from the Counsel for Discipline notifying Mefferd of the Rose complaint. Again, there was no response within the time period of 15 working days. Carlson wrote Mefferd regarding the Rose complaint on July 24 and again on August 5. Mefferd did not respond. On August 20, Carlson received a fax from Mefferd requesting until August 22 to respond. However, the Counsel for Discipline received no response from Mefferd on August 22. Carlson wrote again on September 2, with no response. On September 30, Carlson left a voice mail message at Mefferd's office. There was

no response. Carlson subsequently filed charges regarding the Rose complaint and the Alderman complaint with the Committee.

The Committee hearing, set for March 12, 1998, included charges of failing to return an overpayment to the Aldermans, failing to timely respond to the Alderman complaint, neglect of a legal matter regarding Rose's appeal, and failing to timely respond to the Rose complaint.

The Aldermans testified at the Committee hearing. Rose, who was still incarcerated, testified via affidavit that he met with Mefferd in February 1996 to discuss his appeal. Mefferd wrote Rose a letter in April saying that he was working on the appeal and would be in touch with Rose some time during the week of April 15. Rose never heard from Mefferd after that, although Rose tried to contact Mefferd at least three times via the public defender's office. At no time did Rose instruct Mefferd not to pursue his appeal. Rose initiated a complaint with the Counsel for Discipline in the spring of 1997, attempting to find out why his appeal had been dismissed and why he had heard nothing from Mefferd. The record reflects that Rose's appeal was dismissed because Mefferd failed to file a brief on Rose's behalf.

Mefferd testified that he failed to file a brief "[b]ecause Mr. Rose had — Mr. Rose had not directed me with regard to how he wanted his appeal — what he wanted to appeal." When asked, "Did Mr. Rose ever tell you, It's okay with me that you don't file a brief, that you can just drop the appeal?" Mefferd answered, "Not in those direct words, no. But he also didn't tell me what he wanted me to do with his appeal." When Mefferd was asked if he ever told Rose that he would not proceed with the appeal, Mefferd admitted, "I didn't tell him in one sentence that I will not proceed with your appeal, no."

At the Committee hearing, Mefferd submitted a "draft" he had discovered of his written response to the Rose complaint. Mefferd was unable to produce a copy of the actual letter. Mefferd testified that he mailed his response to the Rose complaint on August 22, 1997. However, Mefferd also testified that he received a letter from the Counsel for Discipline on September 2 indicating that his written response to the Rose complaint had not been received. Mefferd admitted he "did not

act" in response to the September 2 letter, offering no explanation for his behavior.

Mefferd was also asked why he had not previously refunded the $750 to the Aldermans, whose complaint had been pending for approximately 18 months. He testified that

> by the time this hearing was scheduled, we were so far into this that I wanted to wait and see what happened. . . .
>
> [T]he other thing is there have been a number of occasions where I wasn't sure if I owed Mr. Alderman the money. And the funds were not immediately available to give him the $750.
>
> And the other thing is I wasn't sure where Mr. Alderman was after he was released.

Mefferd agreed that he was overpaid in the amount of $750. During the hearing, Mefferd placed $750 on the table, which the Aldermans accepted as repayment.

After the Committee hearing, the Disciplinary Review Board determined that formal charges should be filed against Mefferd. These charges alleged that Mefferd violated the attorney's oath of office and the following provisions of the Code of Professional Responsibility:

> DR 1-102 Misconduct.
>
> (A) A lawyer shall not:
>
> (1) Violate a Disciplinary Rule.
>
> . . . .
>
> (5) Engage in conduct that is prejudicial to the administration of justice. . . .
>
> (6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.
>
> . . . .
>
> DR 6-101 Failing to Act Competently.
>
> . . . .
>
> (3) Neglect a legal matter entrusted to him or her.
>
> . . . .
>
> DR 9-102 Preserving Identity of Funds and Property of a Client.
>
> . . . .
>
> (B) A lawyer shall:
>
> . . . .

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

A formal hearing was held before a referee on April 14, 1999. The full transcript from the proceedings of the March 12, 1998, Committee hearing was admitted into evidence without objection. The Aldermans appeared and testified. Mefferd also appeared and testified that he was not aware the Aldermans were claiming an overpayment until he received the notice of complaint from Carlson in 1996. When asked if either of the Aldermans had ever tried to request the $750 from him prior to filing their complaint, he responded, "I don't recall."

Regarding the Rose complaint, Mefferd testified that because he was not sure upon what grounds Rose wished to appeal, Mefferd did not file a brief. Rose was living in Florida at the time of the hearing. Rose's testimony consisted of his affidavit previously offered to the Committee. This affidavit was received by the referee without objection.

Mefferd testified that he did not know whether his responses to the Alderman and Rose complaints were received by the Counsel for Discipline within the required 15 working days of receipt. In response to further questioning, Mefferd testified that he mailed his response to the Alderman complaint on September 16 or 17, 1996. He also testified that he believed he sent an additional copy of this response to Carlson at some point after that.

Regarding the Rose complaint, Mefferd testified that he prepared the letter on August 22, 1997, intending to mail it, and that "[his] assumption is that it was mailed." When asked if he responded to Carlson's correspondence and calls after August 22, indicating the Counsel for Discipline had not received Mefferd's response, Mefferd testified, "As to additional conversations with Mr. Carlson I don't know."

Mefferd offered a copy of his written response to the Rose complaint dated August 22, 1997. Mefferd requested that the record be left open for 10 days after the hearing to submit additional evidence. Mefferd's request was granted, but Mefferd provided nothing beyond what was offered at the hearing.

## REFEREE'S FINDINGS

Based on the record made before the Committee and the testimony before the referee, the referee found by clear and convincing evidence that Mefferd had violated Canon 1, DR 1-102(A)(1); Canon 2, DR 2-106; and Canon 9, DR 9-102(B)(4), in that Mefferd failed to properly account for and promptly refund the $750 overpayment to the Aldermans; DR 1-102(A)(1) and Canon 6, DR 6-101(A)(3), in that Mefferd failed to file a brief in the Rose appeal without Rose's knowledge or permission; and DR 1-102(A)(1), (5), and (6), in that Mefferd failed to respond in a timely manner to the Counsel for Discipline regarding both complaints. From the evidence presented, the referee did not find any mitigating circumstances regarding these violations. The referee recommended that Mefferd be reprimanded for his actions.

## SCOPE OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. The charges against an attorney must be established by clear and convincing evidence. *State ex rel. NSBA v. McArthur*, 257 Neb. 618, 599 N.W.2d 592 (1999).

When no exceptions to the referee's findings of fact are filed by either party in a disciplinary proceeding, this court may, at its discretion, adopt the findings of the referee as final and conclusive. *State ex rel. NSBA v. Denton, ante* p. 600, 604 N.W.2d 832 (2000); Neb. Ct. R. of Discipline 10(L) (rev. 1996).

## ASSIGNMENT OF ERROR

The relator assigned as error the referee's recommended sanction of reprimand, arguing that the gravity of Mefferd's violations requires a more severe sanction.

## ANALYSIS

The only exception filed in this case relates to the recommended sanction. No exceptions were filed regarding the ref-

eree's factual findings. Under rule 10(L), we accept the findings of the referee as final and conclusive. See *Denton, supra.* Thus, the only issue left to consider is the appropriate sanction in this case.

■ To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following facts: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *McArthur, supra.* Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. *Id.*

Regarding Mefferd's failure to remit the $750 to the Aldermans, Mefferd argues that because he ultimately refunded the money to the Aldermans, reprimand is an appropriate sanction.

■ Mefferd misunderstands the nature of his offense. Retaining $750 that belongs to a client is a misappropriation of the client's funds. Mefferd seems to think that because he repaid the funds in 1998, this justifies his behavior. However, "a lawyer's restitution of a client's funds after being faced with legal accountability does not exonerate professional misconduct." *State ex rel. NSBA v. Statmore,* 218 Neb. 138, 143, 352 N.W.2d 875, 878 (1984).

■ As an attorney, Mefferd bears the responsibility to accurately account for his client's funds. See *Statmore, supra.* Absent mitigating circumstances, the appropriate discipline in cases of misappropriation or commingling of client funds is typically disbarment. *State ex rel. NSBA v. Malcom,* 252 Neb. 263, 561 N.W.2d 237 (1997); *State ex rel. NSBA v. Gridley,* 249 Neb. 804, 545 N.W.2d 737 (1996).

In *Statmore,* a case also involving an overpayment, there was a dispute as to whether the $500 fee had been paid because of the client's insufficient fund check, which later cleared. Because of poor bookkeeping, the attorney did not realize that the insufficient fund check had actually cleared. When the client filed a complaint, the attorney properly responded to the Counsel for

Discipline and the overpayment was refunded within a few months. In contrast, Mefferd consistently failed to respond to the Counsel for Discipline and did not refund the overpayment for over 1½ years.

■ Mefferd's attitude regarding the overpayment is reflected in his reasons for not refunding the $750 prior to the Committee hearing. Mefferd stated at the hearing that he "wanted to wait and see what happened." Mefferd chose to do nothing about the overpayment until he was actually before the Committee on Inquiry. For purposes of determining the proper discipline in a disciplinary proceeding, we consider an attorney's acts both underlying the offenses and throughout the disciplinary proceeding. *State ex rel. NSBA v. Johnson*, 256 Neb. 495, 590 N.W.2d 849 (1999).

■ We next consider Mefferd's failure to file a brief in the Rose matter, which caused Rose's appeal to be dismissed. Mefferd's explanation for failing to file a brief was that Rose "never told him what he wanted to do." However, Mefferd also admitted that Rose never directed him to abandon the appeal and that Mefferd never told Rose directly that Mefferd was not filing a brief. Essentially, Mefferd's explanation is that Rose's behavior left Mefferd unable to file a brief. However, as we noted in *State ex rel. NSBA v. McArthur*, 257 Neb. 618, 599 N.W.2d 592 (1999), a lawyer is responsible for adequately representing his or her client regardless of that client's behavior, and if that proves impossible, then the lawyer should withdraw from representation of that client.

In the present case, if Rose's behavior left Mefferd unable to adequately represent Rose on his appeal, the proper course for Mefferd was to withdraw from the representation. By letting the time period to file the brief elapse without taking any further action, Mefferd neglected a legal matter entrusted to him.

We now turn to Mefferd's conduct in twice failing to respond to the Counsel for Discipline. Mefferd first received notice of the Alderman complaint on August 12, 1996. Mefferd chose to do nothing. Thereafter, Counsel for Discipline repeatedly contacted Mefferd, informing him that it had not received a response to the Alderman complaint. Finally, on January 30, 1997, almost 6 months later, Counsel for Discipline received Mefferd's reply.

In *State ex rel. NSBA v. Kirshen*, 232 Neb. 445, 441 N.W.2d 161 (1989), we considered a situation in which counsel failed to file two responses with the Counsel for Discipline, then after proceedings commenced, produced documents purporting to be the missing responses with a typed date of several months earlier. As we discussed in *Kirshen*, such documents do nothing to address the fact that the attorney failed to file a timely response with the Counsel for Discipline. Additionally, Mefferd failed to respond to Counsel for Discipline's requests for further information regarding the Alderman complaint on at least three occasions.

■ Mefferd's pattern of conduct continued with the Rose complaint. We note that cumulative acts of attorney misconduct are distinguishable from isolated incidents of neglect, therefore justifying more serious sanctions. *Johnson, supra.* Mefferd received official notice of the Rose complaint on July 1, 1997. No response was received by the Counsel for Discipline until 8 months later. Counsel for Discipline attempted numerous times to contact Mefferd about his failure to respond. Mefferd received a letter from the Counsel for Discipline dated September 2, 1997, which stated that no response to the Rose complaint had been received. Mefferd admitted that he took no action in response to this letter.

■ Mefferd asserts that since his responses to the complaints did arrive eventually, there was no harm done by their tardiness. Mefferd fails to recognize that responding to disciplinary complaints in an untimely manner and ignoring requests for information from the Counsel for Discipline make it impossible for the Counsel for Discipline to effectively do its work. As we noted in *Kirshen*, such behavior indicates a "disrespect for our disciplinary jurisdiction and [a] lack of concern for the protection of the public, the profession, and the administration of justice." 232 Neb. at 473, 441 N.W.2d at 178. The disciplinary process as a whole must function effectively in order for the public to have confidence in the integrity of the profession and to be protected from unscrupulous acts.

■ In considering the appropriate sanction for Mefferd's actions, we note that the propriety of a sanction must be considered with reference to the sanctions we have imposed in prior

cases presenting similar circumstances. *State ex rel. NSBA v. McArthur*, 257 Neb. 618, 599 N.W.2d 592 (1999). Therefore, we look in part to *Kirshen,* where the attorney failed to timely respond to two disciplinary complaints. In *Kirshen*, we entered a judgment of disbarment. However, we note that there were additional factors in *Kirshen* regarding the mishandling of an estate which are not present here. We also look in part to *State ex rel. NSBA v. Statmore*, 218 Neb. 138, 352 N.W.2d 875 (1984), where the attorney was suspended for 6 months for retaining a $500 overpayment. However, in *Statmore*, the attorney timely responded to the Counsel for Discipline. *Kirshen* and *Statmore*, taken together, provide similar circumstances from which we may determine the appropriate sanction for Mefferd.

## CONCLUSION

In light of the particular facts of this case and with no mitigating circumstances presented, we find that Mefferd should be suspended from the practice of law for a period of 1 year, effective immediately.

JUDGMENT OF SUSPENSION.

MILLER-LERMAN, J., not participating.