611 N.W.2d 80 (2000)
259 Neb. 530
STATE of Nebraska ex rel. NEBRASKA STATE BAR ASSOCIATION, relator,
v.
Scott D. FREESE, respondent.
No. S-99-802.
Supreme Court of Nebraska.
May 19, 2000.
*81 HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.
On July 15, 1999, formal charges were filed by the Committee on Inquiry of the Third Disciplinary District of relator Nebraska State Bar Association (NSBA) against respondent Scott D. Freese. Amended formal charges were filed on July 16 by the NSBA's Assistant Counsel for Discipline, pursuant to Neb. Ct. R. of Discipline 10(E) (rev.1996). The charges alleged, in two counts, violations of the Code of Professional Responsibility (Code) and the attorney's oath of office. See Neb. Rev.Stat. § 7-104 (Reissue 1997).
Count I relates to conflicts of interest in connection with Freese's representation of two clients, Tim and Tera Holland, husband and wife. Count I alleged violations of Canon 1, DR 1-102(A)(1) and (4) through (6) (misconduct); Canon 2, DR 2-110(B) (withdrawal from employment); Canon 5, DR 5-101(A) (refusing employment when interests of lawyer may impair lawyer's independent professional judgment); and Canon 5, DR 5-105(A) through *82 (C) (refusing to accept or continue employment if interests of another client may impair independent professional judgment of lawyer).
The charge in count II relates to neglect in Freese's handling of the estates of two sisters, Ellen McCarthy and Nellie McCarthy. Count II alleged violations of DR 1-102(A)(1) and (5) (misconduct), and Canon 6, DR 6-101(A)(3) (failing to act competently).
Freese filed an answer through counsel on September 20, 1999, admitting substantially all of the factual allegations in the charges, but denying that his actions violated the Code. Although Freese also challenged the procedure utilized by the Committee on Inquiry as violative of his due process rights guaranteed under the Nebraska and U.S. Constitutions, this issue was abandoned during the proceedings. A referee was appointed pursuant to rule 10(J) on September 29, and the referee filed the oath of referee on October 4.
A pretrial hearing was conducted on November 19, 1999. An evidentiary hearing was held in Norfolk, Nebraska, on December 1. Freese was present and represented by counsel. Four witnesses were called to testify by the NSBA, including Freese and Tera. Three witnesses were called to testify by Freese. Sixty exhibits were admitted as evidence. After the parties rested and presented arguments, the case was submitted for a recommendation by the referee to the court.
In his report of referee filed January 27, 2000, the referee specifically found by clear and convincing evidence that Freese had violated DR 1-102(A)(4), DR 5-101(A), and DR 5-105(A) through (C), as alleged in count I. These Code provisions provide as follows:
DR 1-102 Misconduct. (A) A lawyer shall not:
. . . .
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
. . . .
DR 5-101. Refusing Employment When the Interests of the Lawyer May Impair the Lawyer's Independent Professional Judgment.
(A) Except with the consent of his or her client after full disclosure, a lawyer shall not accept employment if the exercise of the lawyer's professional judgment on behalf of a client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests.
. . . .
DR 5-105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.
(A) A lawyer shall decline proffered employment if the exercise of the lawyer's independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105(C).
(B) A lawyer shall not continue multiple employment if the exercise of his or her independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5-105(C).
(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his or her independent professional judgment on behalf of each.
*83 With respect to count II, the referee specifically found by clear and convincing evidence that Freese had violated DR 1-102(A)(1) and (5) and DR 6-101(A)(3). These Code provisions provide as follows: "DR 1-102 Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule.... (5) Engage in conduct that is prejudicial to the administration of justice.... DR 6-101 Failing to Act Competently. (A) A lawyer shall not:.... (3) Neglect a legal matter entrusted to him or her."
With respect to the sanctions which ought to be imposed for the foregoing violations, the referee recommended that Freese be suspended from the practice of law for 1 year on count I and that prior to reinstatement, Freese submit a probation plan for approval by this court showing association and/or supervision by a mentoring lawyer for 2 years following reinstatement, with compliance reports to be submitted quarterly by the mentoring lawyer to the Counsel for Discipline.
With respect to the sanctions which ought to be imposed on count II, the referee recommended that Freese should be suspended from the practice of law for 6 months to run concurrently to the sanction imposed on count I and that reinstatement and probation be conditioned on the same terms as count I.
Following the filing of the referee's report, Freese had 10 days during which to file written exceptions to the report, under rule 10(L). No exceptions were filed. As permitted under rule 10(L), this court considers the findings of the referee final and conclusive.
The substance of the referee's findings may be summarized as follows: Freese was admitted to the practice of law in the State of Nebraska on September 19, 1983, and was engaged in the practice of law in Norfolk, Nebraska, during the period relevant hereto.
As to count I, Freese was retained by Tim and Tera on January 22, 1997, to represent them in a personal injury accident arising from Tim's motorcycle accident, and to represent Tim on three traffic citations arising from the same accident. A settlement agreement was reached in connection with the accident, for which the final distribution and accounting was issued to both Tim and Tera on August 22.
On April 14, 1997, Tera met with Freese to request that he represent her in a divorce from Tim. The marriage was of 7 years' duration and there were two children born of the marriage. On April 14, Tim signed a handwritten note stating he agreed to let Freese represent Tera in the divorce. Freese did not advise Tim of the "possible effect" and consequence of such consent. See DR 5-105(C). Throughout the month of May, various orders were entered in connection with the dissolution action regarding temporary custody, child support, and visitation. The parties entered into a stipulation and property settlement agreement on June 26. A decree of dissolution was entered on July 7.
During the course of the dissolution proceeding, on May 11, 1997, Freese began a sexual relationship with Tera. Tim was first informed of this relationship on October 28. At the hearing of the instant matter on December 1, 1999, Freese and Tera had set a marriage date of December 17.
On May 21, 1997, Tim was arrested on various motor-vehicle-related charges. Freese agreed to represent Tim. Freese represented Tim at various pretrial proceedings until Tim learned of Freese's sexual relationship with Tera. At some point thereafter, Tim was arrested for making terroristic threats against Freese and his family.
Tim filed a complaint with the NSBA on January 30, 1998, alleging that Freese had a conflict of interest in his representation of Tim and Tera in 1997.
The substance of the referee's findings as to count II may be summarized as follows: Ellen McCarthy of Madison *84 County, Nebraska, died on January 6, 1995, at the age of 86. Freese was appointed personal representative under her will on January 17. Ellen lived with her sister Nellie McCarthy. Nellie died on February 25, at the age of 84. Freese was appointed personal representative on March 24. Ellen and Nellie had three surviving brothers: Charles McCarthy, James McCarthy, and Michael McCarthy. An inventory in each estate was filed on June 14.
In Nellie's will, she had bequeathed all her property to Ellen. There were no contingent bequests should Ellen predecease Nellie, as happened here.
Freese made a partial distribution from the estate of Ellen to the three brothers in the amount of $20,000 each in July 1995. On November 30, Freese, as personal representative of both estates, signed an agreement for sale of the jointly owned real estate of Ellen and Nellie, which was approved by the court on December 14.
There was no action on either file until May 17, 1996, when the county court for Madison County, Nebraska, issued a show cause order in the estate of Ellen, directing Freese to close the estate by July 18. Freese appeared in court on July 18 and requested an additional 90 days to complete and close the estate, which the court granted. On December 23, 1997, the court again issued a show cause order in the estate of Ellen, directing Freese to close the estate by February 6, 1998.
In the estate of Nellie, the county court issued an order on October 31, 1997, directing Freese to close the estate by November 21.
Freese filed petitions for complete settlement of each estate on February 6, 1998. Hearings on each petition were set for March 4. On March 6, Freese filed a motion to continue each estate hearing to March 18. On March 18, Freese failed to attend the scheduled hearings in each case. On March 25, the county court, on its own motion, reviewed both estates.
After finding that Freese had neglected to perform his duties as personal representative, the court removed Freese as personal representative and closed each estate. The surviving brothers of Ellen and Nellie filed applications for their appointment as successor personal representatives for each estate on April 23, 1998.
A new attorney was hired to handle both estates. This attorney identified additional heirs who would be new beneficiaries and reconstructed all financial accountings so that he could close the estates.
As a result of Freese's failure to determine and pay Nebraska inheritance taxes due in each estate in a timely manner, interest and penalties on the inheritance taxes accrued and became due. All amounts due as interest were paid by Freese in the sum of $1,642.26. Penalties were ultimately waived. Although the size of the beneficiaries' inheritances was not diminished, they suffered a delay of 2 years of access to those inheritances.
The wife of Charles McCarthy filed a complaint with the NSBA against Freese on April 21, 1998, in connection with the neglect of the estates of Ellen and Nellie.
To sustain a complaint in a disciplinary proceeding against an attorney, a complaint must be established by clear and convincing evidence. State ex rel. NSBA v. Mefferd, 258 Neb. 616, 604 N.W.2d 839 (2000). Based on the record and the undisputed findings of the referee, we find that the above-recited facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude that by virtue of the conflicts of interest as alleged in count I, Freese has violated DR 1-102(A)(4), DR 5-101(A), and DR 5-105(A) through (C), and that by virtue of the neglect as alleged in count II, Freese has violated DR 1-102(A)(1) and (5) and DR 6-101(A)(3). We further conclude that Freese has violated the attorney's oath of office. See § 7-104.
*85 We have repeatedly stated that "[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances." State ex rel. NSBA v. Brown, 251 Neb. 815, 821, 560 N.W.2d 123, 128 (1997). Accord State ex rel. NSBA v. Gridley, 249 Neb. 804, 545 N.W.2d 737 (1996).
In the instant case, the referee recommended that Freese be suspended from the practice of law for 1 year on count I and 6 months on count II, to run concurrently, and that reinstatement be conditioned on Freese's being subject to supervision by a mentor. The referee noted that although Freese admitted serious lapses in professional judgment, the evidence showed that Freese has been otherwise professionally competent for 16 years in the practice of law and was candid and cooperative during the disciplinary process. The referee stated that following a sanction, Freese should remain fit to practice law in Nebraska.
Neb. Ct. R. of Discipline 4 (rev.1996) provides that the following, in part, may be considered by the court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.
We have set out the factors which we consider in determining whether and to what extent discipline should be imposed:
To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following facts: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.
State ex rel. NSBA v. Schleich, 254 Neb. 872, 874, 580 N.W.2d 108, 110 (1998). Accord, State ex rel. NSBA v. Mefferd, 258 Neb. 616, 604 N.W.2d 839 (2000); State ex rel. NSBA v. Denton, 258 Neb. 600, 604 N.W.2d 832 (2000).
The propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. State ex rel. NSBA v. Mefferd, supra; State ex rel. NSBA v. McArthur, 257 Neb. 618, 599 N.W.2d 592 (1999). With respect to the imposition of attorney discipline in an individual case, we have stated that "[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case." State ex rel. NSBA v. Mefferd, 258 Neb. at 624, 604 N.W.2d at 845. Accord State ex rel. NSBA v. Denton, supra. We have also noted that "[t]he determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors." State ex rel. NSBA v. Schleich, 254 Neb. at 874, 580 N.W.2d at 110. Cumulative acts of attorney misconduct are distinguishable from isolated incidents, therefore justifying more serious sanctions. State ex rel. NSBA v. Mefferd, supra. For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. Id.; State ex rel. NSBA v. Denton, supra.
The evidence in the present case establishes, inter alia, that with respect to count I, Freese and Tera began a sexual relationship on May 11, 1997, in a period of time during which Freese was representing both Tim and Tera in connection with Tim's motorcycle accident. The relationship continued throughout Freese's representation of Tera in her divorce from Tim, contributing to various Code violations. Freese acknowledged his sexual relationship with Tera in these proceedings.
As we have stated, Freese's conduct violated numerous provisions of the Code and violated his oath of office as an attorney, and we do not condone it. The circumstances surrounding Freese's sexual relationship *86 with his client, Tera, and Freese's cooperation in connection with these proceedings, however, distinguish this case from the recent case State ex rel. NSBA v. Denton, supra, in which we disbarred the offending attorney who had had a sexual relationship with his client. In Denton, we noted that Denton took advantage of his client's vulnerability; placed his self-interest above that of his client, thus contributing to the client's loss of custody of her children; and denied the existence of their sexual relationship throughout the attorney disciplinary process. Denton's failure to take responsibility for his actions demonstrated his present and future unfitness to practice law, warranting disbarment. The instant case, while serious, does not warrant disbarment.
In the present case, there is no specific evidence that Tera suffered psychological harm as a result of her relationship with Freese or that the terms of her divorce settlement were adversely impacted by her relationship with Freese. Furthermore, Freese has admitted his relationship with Tera and cooperated in these attorney discipline proceedings.
The court has considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court finds that Freese should be suspended from the practice of law in the State of Nebraska for 18 months. The suspension shall be effective upon the filing of this opinion. Pursuant to Neb. Ct. R. of Discipline 23 (rev.1996), the costs of these proceedings are assessed in favor of the NSBA and against Freese, and reinstatement shall be conditioned upon payment thereof. Freese shall forthwith comply with Neb. Ct. R. of Discipline 16 (rev. 1996), and upon failure to do so, he shall be subject to punishment for contempt of court.
JUDGMENT OF SUSPENSION.