STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION,
RELATOR, V. HUGH I. ABRAHAMSON, RESPONDENT.
634 N.W. 2d 462

Filed September 28, 2001.   No. S-00-692.

John W. Steele, Assistant Counsel for Discipline, for relator.

Clarence E. Mock III and Denise E. Frost, of Johnson & Mock, for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## INTRODUCTION

On July 3, 2000, formal charges were filed by the Committee on Inquiry of the Second Disciplinary District of the Nebraska State Bar Association, relator, against attorney Hugh I. Abrahamson, respondent. The formal charges alleged, inter alia, that Abrahamson violated the following provisions of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1) and (5), and Canon 9, DR 9-102(A)(2) and (B)(3).

DR 1-102(A)(1) and (5) provide: "(A) A lawyer shall not: (1) Violate a Disciplinary Rule. . . . (5) Engage in conduct that is prejudicial to the administration of justice." DR 9-102(A)(2) and (B)(3) provide:

> (A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
>
> . . . .
>
> (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
>
> (B) A lawyer shall:
>
> . . . .
>
> (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them.

The formal charges also alleged Abrahamson violated his oath of office as an attorney. See Neb. Rev. Stat. § 7-104 (Reissue 1997).

On August 29, 2000, Abrahamson filed an answer to the formal charges, admitting certain of the allegations, but denying that he had violated either the disciplinary rules or his oath as an attorney. On September 7, this court appointed a referee to hear

evidence and make a recommendation as to the appropriate sanction to be imposed. A referee hearing was held on November 21, at which hearing evidence was adduced and argument was made.

On January 18, 2001, the referee filed his report and found Abrahamson had violated DR 1-102(A)(1) and (5) and DR 9-102(A)(2) and (B)(3) of the Code of Professional Responsibility and his oath of office as an attorney, and recommended Abrahamson's suspension from the practice of law for 1 year. On January 26, Abrahamson filed his exceptions to the referee's report, challenging, inter alia, the referee's findings that he violated DR 9-102(A)(2).

## FACTS

The referee's factual findings may be summarized as follows: Abrahamson, a solo practitioner, was admitted to practice law in the State of Nebraska on February 1, 1985, and at all times relevant hereto has practiced in Omaha, Nebraska. On June 30, 1994, Abrahamson was retained by Beverly A. Doyle to represent her in a legal separation from her husband, Wayne Oppenheim. As a result of his representation of Doyle, Abrahamson sent Doyle monthly statements for his attorney fees, which statements she did not pay. Pursuant to the terms of his engagement agreement with Doyle, Abrahamson was entitled to deduct his attorney fees from any moneys he received on behalf of Doyle.

At some point in time after June 30, 1994, the separation action changed to a divorce proceeding. As a result of the divorce proceeding, the marital house was sold. Net proceeds from the sale amounted to $46,337.81. Doyle and Oppenheim disputed entitlement to the sale proceeds. Doyle claimed the entirety of the net proceeds from the sale of the house, and Oppenheim claimed one half of the net proceeds. Accordingly, on March 8, 1996, the net sale proceeds of $46,337.81 were deposited into a trust account Abrahamson maintained, awaiting a court order directing distribution.

At the time he represented Doyle, Abrahamson maintained two trust accounts in separate banks: FirsTier trust account 322-0342 and First Bank trust account 424-8700 (8700). The two banks merged in February 1996, under the name of First

Bank, and Abrahamson's former FirsTier trust account number was changed to 3220-3424 (3424). First Bank gave Abrahamson new deposit slips to use for the 3424 account, but mistakenly encoded the account number for the 8700 account on the deposit slips.

After February 20, 1996, all deposits Abrahamson intended to make into the 3424 account were made into the 8700 account, including the deposit of the $46,337.81 net proceeds from the sale of the house. Checks written on the 3424 account, however, continued to be honored on that account. First Bank sent Abrahamson monthly statements for each account, which statements would have alerted Abrahamson to the depositing error. It is undisputed that Abrahamson did not open the statements and did not reconcile the trust account balances. Accordingly, Abrahamson did not note the mistake. Because of the confusion with respect to the 3424 and 8700 accounts, for purposes of our consideration of the allegations against Abrahamson, we will consider the accounts jointly as one account which we will refer to hereafter as "the trust account."

On August 31, 1996, the trial court entered its memorandum decision in the divorce proceeding. The decision awarded Doyle the entire net proceeds from the sale of the house. After allowing the applicable appeal period to run, Abrahamson issued a check to Doyle in the amount of $21,701.58, representing the net sale proceeds of the house minus Abrahamson's attorney fees and costs incurred in the divorce proceeding which amounted to $24,636.23.

Doyle was displeased that she did not receive the entirety of the sale proceeds and, after failing in her attempt to negotiate a final fee with Abrahamson, sent a letter to the Counsel for Discipline's office concerning Abrahamson's handling of the proceeds from the sale of the house.

The Counsel for Discipline notified Abrahamson of Doyle's grievance, and during the course of responding to the grievance, Abrahamson notified the Counsel for Discipline regarding his trust account balance. Although the balance had fluctuated for several days in July and August 1996, we note that the record shows that the amount in the trust account did not drop below $21,701.58, representing Doyle's interest in the proceeds from

the sale of the house, after deducting Abrahamson's attorney fees and costs.

It is undisputed that Abrahamson did not open the bank statements or reconcile his check registers, that he failed to maintain separate ledgers for his individual client accounts, and that he failed to reference client accounts on deposits and withdrawals from the trust account. Indeed, according to Abrahamson's own accountant, who testified at the referee's hearing, on a scale of 1 to 10, with 10 being good bookkeeping practices, Abrahamson's accounting practices merited a grade of 1. In the referee's report, he found that Abrahamson had since corrected his accounting practices and now maintains his trust account in accordance with required standards. The referee also found that Abrahamson cooperated fully with the Counsel for Discipline's investigation and was remorseful.

The referee found that within the bar and the community, Abrahamson had a reputation of competence, professionalism, integrity, honesty, hard work, and fitness to practice law and that this reputation was demonstrated through numerous affidavits and letters from judges, lawyers, and clients. The referee also found that Abrahamson had demonstrated a record of service to the bar and to the indigent community through the Nebraska State Bar Association's pro bono Volunteer Lawyers Project.

The referee noted that Abrahamson had been the subject of a prior disciplinary proceeding, involving allegations unrelated to Abrahamson's attorney trust account, for which Abrahamson had received a private reprimand.

In his report, the referee found by clear and convincing evidence that Abrahamson had violated DR 1-102(A)(1) and (5), DR 9-102(A)(2) and (B)(3), and his oath as an attorney. With respect to the sanction which ought to be imposed for the foregoing violations and considering the aggravating and mitigating factors the referee found present in the case, the referee recommended that Abrahamson be suspended from the practice of law in the State of Nebraska for 1 year.

Abrahamson filed his exceptions to the referee's report. In Abrahamson's exceptions, he claimed that the referee erred (1) in finding that Abrahamson violated DR 9-102(A)(2), (2) in finding that he unethically "withdrew" and "misappropriated"

funds belonging to Doyle, (3) in failing to find that Abrahamson's written fee agreement with Doyle justified Abrahamson's use of Doyle's funds on deposit in the trust account, (4) in finding that Abrahamson violated DR 9-102(A) and (B) and his oath of office as an attorney, and (5) in recommending an excessive disciplinary sanction. In argument to the court, Abrahamson focused on the appropriate discipline.

## ANALYSIS

*Violation of Disciplinary Rules and Attorney's Oath.*

A proceeding to discipline an attorney is a trial de novo on the record, in which this court reaches a conclusion independent of the findings of the referee; provided, however, that when the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Mefferd,* 258 Neb. 616, 604 N.W.2d 839 (2000). To sustain a complaint in a disciplinary proceeding against an attorney, a complaint must be established by clear and convincing evidence. *Id.*

Based on our de novo review of the record, *id.*, we conclude that the above-related facts establish by clear and convincing evidence that Abrahamson has failed to maintain complete and accurate records of client funds coming into his possession and has failed to render appropriate accounts of client funds, in violation of DR 9-102(B)(3). We further conclude that Abrahamson has violated DR 1-102(A)(1) and (5) and the attorney's oath of office. We further conclude, however, under our standard in which a proceeding to discipline an attorney is a trial de novo on the record, see *Mefferd, supra,* that the record does not demonstrate by clear and convincing evidence that Abrahamson violated DR 9-102(A)(2).

*Imposition of Attorney Discipline.*

We have stated that "[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances." *State ex rel. NSBA v. Brown,* 251 Neb. 815, 821, 560 N.W.2d 123, 128 (1997). Accord *State ex rel. NSBA v.*

*Gridley*, 249 Neb. 804, 545 N.W.2d 737 (1996). With respect to the imposition of attorney discipline in an individual case, we have stated that "[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case." *State ex rel. NSBA v. Rothery*, 260 Neb. 762, 766, 619 N.W.2d 590, 593 (2000). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000); *State ex rel. NSBA v. Denton*, 258 Neb. 600, 604 N.W.2d 832 (2000). We have previously set out the factors which we consider in determining whether and to what extent discipline should be imposed:

> To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.

*State ex rel. NSBA v. Rothery*, 260 Neb. at 766, 619 N.W.2d at 593. Accord, *State ex rel. NSBA v. Howze*, 260 Neb. 547, 618 N.W.2d 663 (2000); *State ex rel. NSBA v. Mefferd, supra*.

We have noted that "[t]he determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors." *State ex rel. NSBA v. McArthur*, 257 Neb. 618, 631, 599 N.W.2d 592, 601 (1999). For example, an isolated incident not representing a pattern of conduct is considered as a factor in mitigation. See *State ex rel. NSBA v. Bruckner*, 249 Neb. 361, 543 N.W.2d 451 (1996).

The evidence in the present case establishes that Abrahamson failed to maintain complete and accurate records of client funds coming into his possession. As mitigating factors, we note Abrahamson's cooperation during the disciplinary proceedings, including the fact that he reported the condition of his trust account to the Counsel for Discipline. We also note Abrahamson's continuing commitment to the legal profession and the community. Furthermore, we note that the banking error

in mislabeling Abrahamson's deposit slips exacerbated Abrahamson's poor accounting practices. We are aware of the previous reprimand, but note that it did not involve allegations regarding Abrahamson's trust account.

## CONCLUSION

We conclude that the appropriate judgment is to suspend Abrahamson from the practice of law in the State of Nebraska for 90 days, effective immediately. In addition, Abrahamson is ordered to retain, at his expense, an accountant to audit his trust account every 6 months, for a period of 3 years, and submit the results of these audits to the Counsel for Discipline. Pursuant to Neb. Ct. R. of Discipline 23 (rev. 2001), the costs of these proceedings are assessed against Abrahamson.

JUDGMENT OF SUSPENSION.