634 N.W.2d 467 (2001)
262 Neb. 653
STATE of Nebraska ex rel. COUNSEL FOR DISCIPLINE OF the NEBRASKA SUPREME COURT, Relator,
v.
Joseph LOPEZ WILSON, Respondent.
No. S-01-122.
Supreme Court of Nebraska.
September 28, 2001.
*470 John W. Steele, Assistant Counsel for Discipline, for relator.
Joseph Lopez Wilson, pro se.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

NATURE OF CASE
PER CURIAM.
This is an original proceeding seeking to discipline respondent, Joseph Lopez Wilson, for violating his oath of office as an attorney and Canon 1, DR 1-102(A)(1) and (6), of the Code of Professional Responsibility. Relator, the Counsel for Discipline of the Nebraska Supreme Court, initially filed charges with the Committee on Inquiry of the Second Disciplinary District of the Nebraska State Bar Association (NSBA). A hearing panel of the Committee on Inquiry heard testimony on September 21, 2000, at which hearing both relator, through counsel, and respondent, pro se, were present. Testimony was given, and evidence was presented. The panel concluded there were reasonable grounds to believe respondent had engaged in conduct that violated the Code of Professional Responsibility.
Pursuant to Neb. Ct. R. of Discipline 27 (rev.2001), all formal charges pending before the Disciplinary Review Board on January 1, 2001, were to be filed with the Clerk of the Supreme Court. The formal charges in this case were filed with the clerk on January 26, 2001, a summons was issued and, together with the formal charges, served upon respondent.
Respondent filed an answer admitting the essential factual allegations of the formal charges, but denying that his conduct violated the Code of Professional Responsibility. The answer raised only issues of law. Therefore, under Neb. Ct. R. of Discipline 10(K) (rev.2001), the Supreme Court did not appoint a referee, and by order of this court, the matter was to proceed to briefing. Oral argument was waived by respondent.

BACKGROUND
Respondent was admitted to the practice of law in the State of Nebraska on September 17, 1986. At all times relevant hereto, the respondent engaged in the private practice of law in Douglas County, Nebraska. In 1995, respondent obtained an "H-1B1" professional visa for Carlos Moreno to work for U.S. Software, Inc. (USSI). Respondent was paid for his services. A few years later, the company that Moreno was working for subsequently underwent reorganization, and Moreno no longer worked for USSI.
In 1996, Moreno and his wife decided to obtain a divorce. Respondent represented Moreno in the divorce, and a decree was entered on June 13, 1997. Respondent was paid for his services. Over the years, respondent and Moreno became close friends, a friendship which in the words of respondent, was "as close as brothers." During these years, respondent provided legal services to Moreno in a number of other matters. Respondent did not charge Moreno for these services because of their friendship.
During this time period, respondent and his wife separated, and unbeknownst to *471 respondent, his ex-wife and Moreno began an intimate relationship. When respondent eventually learned of the relationship between his ex-wife and Moreno, he threatened to report information to the Immigration and Naturalization Service (INS) that Moreno's job status had changed.
Respondent further threatened to reopen the Moreno divorce case and report to the court that Moreno had misstated his assets and thus committed a fraud upon the court and Moreno's ex-wife. Respondent conditioned his not carrying through with the threats by insisting that Moreno pay respondent $5,000 for the professional services respondent had previously provided to Moreno at no charge. Respondent subsequently lowered his demand to $3,000. Later, at the Committee on Inquiry hearing, respondent testified that he believed that certainly fraud was a ground to reopen the case.
In December 1999, Moreno eventually obtained a protection order against respondent. In the petition and affidavit to obtain the harassment protection order, Moreno wrote that respondent's
[i]ntention [was] clear that [respondent] is trying to harrash [sic] me with the legal cases he have [sic] been representing me. This makes me think that he is trying to performe [sic] a personal vendeta [sic] against me because of a personal situation. [Respondent] has been trying to scare me with faxes, phone calls, and comming [sic] to my apartment.
In the petition and affidavit to obtain the harassment protection order, Moreno stated respondent came to his apartment on several occasions. Respondent came to Moreno's apartment on November 25, 1999, at approximately 10 p.m., at 10:30 p.m., and again at 11 p.m. Respondent was "kno[c]king [on] the door in a very hard way," but Moreno did not answer the door due to respondent's hostile behavior. Respondent also called Moreno at 10:45 p.m. on November 25. Respondent left a paper on Moreno's front door reading, "[Y]ou have been busted. You better seek a new attorney."
On November 26, 1999, at approximately 4:30 a.m., respondent went to Moreno's apartment and "knock[ed] strongly at the front door." Moreno opened the door, and respondent came in "acting in [a] way that made [Moreno think respondent] was out of control." Respondent wanted to know what was going on between Moreno and respondent's ex-wife. Respondent threatened to drop Moreno's INS case. Respondent also sent a fax to Moreno on November 26, which had attached to it a copy of a letter from respondent to the INS advising that he was withdrawing, effective immediately, as Moreno's attorney of record. The letter further stated:
I respectfully request that you review Mr. Moreno's status in the U.S. and revoke same because Mr. Moreno no longer is employed by USSI as it no longer exists. It is my understanding that Mr. Moreno now works for ACI worldwide at 330 South 108 in Omaha, NE. in a totally different capacity than approved under the original labor certification through the Iowa department of labor. I submit to you that his H-1 is also through USSI and should be revoked as well.
Moreno testified at the Committee on Inquiry hearing that respondent was threatening him with several faxes asking for money. If the money was not received, respondent threatened to destroy Moreno's INS case or reopen Moreno's divorce case.
One of these faxes, dated November 25, 1999, contains respondent's request for *472 $5,000. If the $5,000 was not paid on that day, respondent wrote he would advise the INS that Moreno no longer worked for USSI. Respondent also stated, "I will be looking to reopen your divorce case and ask the court to grant your ex[-wife] ½ of your assetts [sic] since you failed to fully disclose your assetts [sic] during your divorce proceeding."
Moreno testified that respondent "didn't have authorization to disclose any information from any of the clients, which are myself and my company." Moreno felt that respondent was trying to "blackmail" him and felt threatened, so Moreno decided he should file a complaint with the proper disciplinary entity in the NSBA.
Respondent admitted that it "looks bad to have a restraining order against your lawyer." Respondent testified that he did not show up for the show cause hearing because he felt it was ridiculous and did not merit a response and that he also had a conflict on the morning of the hearing. Respondent said that he denied about 90 percent of Moreno's allegations in the application for the protection order.

STANDARD OF REVIEW
A proceeding to discipline an attorney is a trial de novo on the record. State ex rel. NSBA v. Flores, 261 Neb. 256, 622 N.W.2d 632 (2001); State ex rel. NSBA v. Mefferd, 258 Neb. 616, 604 N.W.2d 839 (2000).
Disciplinary charges against an attorney must be established by clear and convincing evidence. State ex rel. NSBA v. Flores, supra.

ANALYSIS
Relator argues that the foregoing acts of respondent constitute a violation of his oath of office as an attorney licensed to practice law in the State of Nebraska, as provided by Neb.Rev.Stat. § 7-104 (Reissue 1997). Relator further argues that respondent's actions are in violation of DR 1-102(A)(1) and (6) of the Code of Professional Responsibility. DR 1-102 states in pertinent part: "Misconduct. (A) A lawyer shall not: (1) Violate a Disciplinary Rule.... (6) Engage in any other conduct that adversely reflects on his or her fitness to practice law."
Respondent argues he was not notified of the Committee on Inquiry's decision within 30 days, in violation of the Nebraska Supreme Court Rules of Discipline. Respondent also argues he was denied due process allowed under rule 10 of those rules, wherein a referee could be appointed to review this matter. Respondent asserts that any violation was an isolated incident which will never happen again, but also maintains it would be "a gross imposition by the client to not pay for services rendered." Brief for respondent at 6.
Neb. Ct. R. of Discipline 9(H) (rev.2001) states in pertinent part:
Upon receipt of the Complaint and file from the Counsel for Discipline, the Chairperson of the Committee on Inquiry shall appoint an Inquiry Panel pursuant to Rule 7(F) which shall within thirty days review the Complaint and ...:
....
(4) Determine that there are reasonable grounds for discipline of the Respondent and that a public interest would be served by the filing of a Formal Charge. The Counsel for Discipline shall thereafter prepare and sign Formal Charges for filing with the Court.
The Nebraska Supreme Court Rules of Discipline do not require that respondent be notified of the Committee on Inquiry's decision within 30 days. Rule 9 requires the Committee on Inquiry only to determine *473 within 30 days whether there are reasonable grounds for discipline. If the Committee on Inquiry does determine there are reasonable grounds for discipline, a formal charge would thereafter be filed against respondent, of which respondent would be notified. It is noted that the record reveals that respondent was personally served a copy of the formal charges on February 5, 2001, and that respondent filed his answer to the formal charges on February 7.
Respondent also argues he was denied due process because a referee was not appointed in this case. Rule 10(K) states, "Upon the filing of an answer raising an issue of law only, the Court may, in its discretion, refer the matter to a member as referee for such action in relation thereto as the Court may by its order of reference direct." Under rule 10(K), it is within this court's discretion to forgo the appointment of a referee when the answer raises an issue of law only.
Respondent received notice of the Committee on Inquiry hearing. Respondent personally appeared, representing himself, at the Committee on Inquiry hearing. Respondent had the right to examine and cross-examine witnesses with the right of subpoena and subpoena duces tecum. Respondent was permitted to file exhibits and other evidence at the Committee on Inquiry hearing. Therefore, due process through notice, an appearance, and the chance to question witnesses and present evidence was provided to respondent.
In addition, respondent's answer admitted to the essential factual allegations against him. However, respondent denied that his acts violated his oath as an attorney or the provisions of the Code of Professional Responsibility. Therefore, the only issues are issues of law. This court was within its authority under rule 10(K) to order the parties in this matter to proceed directly to briefing before this court. Our decision to bypass the appointment of a referee under rule 10(K), as the only issue remaining in this case, is a question of law and did not deny due process to respondent.
Disciplinary charges against an attorney must be established by clear and convincing evidence. State ex rel. NSBA v. Flores, 261 Neb. 256, 622 N.W.2d 632 (2001). The record in this matter consists of the court's transcript containing, inter alia, the formal charges, respondent's answer, and the transcript from the September 21, 2000, hearing before the Committee on Inquiry. Based on this record, we find, in our de novo review, by clear and convincing evidence that respondent has violated DR 1-102(A)(1) and (6).
Each case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. State ex rel. NSBA v. Freese, 259 Neb. 530, 611 N.W.2d 80 (2000); State ex rel. NSBA v. Mefferd, 258 Neb. 616, 604 N.W.2d 839 (2000). Violation of a disciplinary rule concerning the practice of law is a ground for discipline. State ex rel. NSBA v. Brown, 251 Neb. 815, 560 N.W.2d 123 (1997); State ex rel. NSBA v. Gridley, 249 Neb. 804, 545 N.W.2d 737 (1996). Mitigating circumstances shown in the record are considered in determining the appropriate discipline imposed on an attorney for violating the Code of Professional Responsibility. State ex rel. NSBA v. Gleason, 248 Neb. 1003, 540 N.W.2d 359 (1995); State ex rel. NSBA v. Ogborn, 248 Neb. 767, 539 N.W.2d 628 (1995).
To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, the Nebraska Supreme Court considers the following *474 factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. State ex rel. NSBA v. Flores, supra; State ex rel. NSBA v. Freese, supra.
Canon 4, EC 4-5, of the Code of Professional Responsibility states in pertinent part, "A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client...." The nature of the offense in this case encompasses respondent's coercive threats to force Moreno to pay him money. Respondent threatened disclosure of confidential information if this money was not paid. Respondent argues he performed valuable services for Moreno and "[i]t would be a gross imposition by the client to not pay for services rendered." Brief for respondent at 6. Respondent further states that "[s]ometimes an attorney must take steps to collect the fee to prevent gross imposition by the client," citing Canon 2, EC 2-23, of the Code of Professional Responsibility. Brief for respondent at 6.
Ethical code 2-23 states, "A lawyer should be zealous in his or her efforts to avoid controversies over fees with clients and should attempt to resolve amicably any differences on the subject. The lawyer should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client." (Emphasis supplied.) Threatening telephone calls, faxes, and visits to a client's home are not efforts which should be used to comply with the letter or the spirit of EC 2-23.
Disciplinary rule 4-101(C) of the Code of Professional Responsibility states in pertinent part, "A lawyer may reveal:... (4) Confidences or secrets necessary to establish or collect the lawyer's fee or to defend the lawyer or his or her employees or associates against an accusation of wrongful conduct." However, a disciplinary rule prohibiting disclosure of client confidences except in certain limited circumstances, including when attorney reasonably believes disclosure is necessary for resolution of a fee dispute, does not permit an attorney to threaten a former client with disclosure of client confidences in order to resolve a fee dispute. See Discipline of Boelter, 139 Wash.2d 81, 985 P.2d 328 (1999).
An attorney such as respondent is expected to use legal means to enforce his rights, not violent threats. See In re Rosenblatt, 253 A.D.2d 106, 687 N.Y.S.2d 23 (1999).
Respondent's conduct has a chilling effect on the public's perception of attorneys and the NSBA in general. The maintenance of the reputation of the NSBA as a whole depends in part on the client's ability to be able to fully confide in his or her attorney. If clients do not believe they can do this, then attorneys will no longer be able to fully and zealously represent their clients.
With regard to the protection of the public, we have stated that "`courts have a duty to maintain public confidence in the legal system and to protect and enhance the attorney-client relationship in all its dimensions.'" State v. Hawes, 251 Neb. 305, 310, 556 N.W.2d 634, 638 (1996).
In addition, EC 4-1 states in pertinent part,
Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him or *475 her. A client must feel free to discuss whatever the client wishes with his or her lawyer.... The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of a client not only facilitates the full development of facts essential to proper representation of the client but also encourages laypersons to seek early legal assistance.
Respondent's threats in this case undermine the confidential and fiduciary nature of the attorney-client relationship and lessen the public's confidence in the legal profession.
The next factor to be considered is the offender's present or future fitness to continue in the practice of law. Hostile, threatening, and disruptive conduct reflects on an attorney's honesty, trustworthiness, diligence, and reliability. In re Appeal of Lane, 249 Neb. 499, 544 N.W.2d 367 (1996). An attorney's conduct which includes progressively abusive language, demeanor, and threats violates disciplinary rules that prohibit engaging in conduct prejudicial to the administration of justice and engaging in conduct that adversely reflects on one's fitness to practice law. See Disciplinary Counsel v. Levin, 35 Ohio St.3d 4, 517 N.E.2d 892 (1988).
Respondent's actions against Moreno were motivated by what he perceived to be a violation of an interpersonal relationship. The fact respondent was an attorney and used his position as an attorney to extract this vengeance on Moreno involves the disciplinary process. Respondent's conduct adversely reflects on his present fitness to engage in the practice of law.
The attitude of respondent generally, as projected from his brief and the record in this case, shows respondent felt that he was used by Moreno at the most vulnerable point in his life. Respondent believes that Moreno utilized their friendship to such an extent that Moreno was able to seduce respondent's ex-wife while she and respondent were trying to reconcile. Based on the record before us, we believe respondent's actions appear to be an isolated incident.

CONCLUSION
The violation of any of the ethical standards relating to the practice of law, or any conduct which tends to bring the courts or legal profession into disrepute, constitutes grounds for suspension or disbarment. State ex rel. NSBA v. Scott, 252 Neb. 698, 564 N.W.2d 588 (1997); State ex rel. NSBA v. Zakrzewski, 252 Neb. 40, 560 N.W.2d 150 (1997).
Based on the above, we find in our de novo review that respondent should be suspended from the practice of law for a period of 2 years from the date of this opinion.
The Clerk of the Supreme Court is directed to cause a copy of this opinion and judgment of suspension from the practice of law to be served upon respondent by certified U.S. mail.
JUDGMENT OF SUSPENSION.